**Cornell FULLER, Petitioner-Appellee,**

v.

**Charles E. ANDERSON,
Respondent-Appellant.**

**No. 80–1808.**

United States Court of Appeals,
Sixth Circuit.

Argued June 17, 1981.

Decided Sept. 18, 1981.

Frank J. Kelley, Atty. Gen. of Michigan, Thomas L. Casey, Asst. Atty. Gen., Lansing, Mich., for respondent-appellant.

Kenneth R. Sasse, Detroit, Mich., for petitioner-appellee.

Before EDWARDS, Chief Judge, and WEICK and KEITH, Circuit Judges.

KEITH, Circuit Judge.

This is an appeal by the State of Michigan from a judgment of the United States District Court for the Eastern District of

Michigan granting a petition for a writ of habeas corpus. The district court granted the writ because it found that the petitioner's jury verdict of felony murder was not supported by sufficient evidence. For the reasons discussed below, we affirm the judgment of Chief Judge John Feikens.

## I

Petitioner Cornell Fuller was convicted by a jury of felony murder in the Recorder's Court of Detroit, Michigan.[1] He was sentenced to serve life in prison and has served at least nine years of that sentence.

On the morning of May 18, 1970 a fire destroyed the home of Safronia Turner at 1554 Lemay in Detroit. Mrs. Turner and several children managed to escape the blaze, but two of Mrs. Turner's children—Ruth and Regina—were killed in the fire. A fire department investigation revealed that the fire was apparently caused by a "Molotov cocktail" deliberately thrown into the rear of the Turner residence. Petitioner Fuller was arrested and charged with first degree murder in violation of 2 M.C.L.A. § 750.316.[2] The State alleged, as the underlying felony, that Fuller aided and abetted Zerious Meadows in deliberately setting[3] the fire at the Turner residence.

The following evidence was introduced at the Fuller trial. Marshall Robinson, Captain of the Detroit Fire Department, testified that a "Molotov cocktail" appeared to have caused the fire. Robert Kuntz, a chemist with the Detroit Fire Department,

testified that gasoline was present on portions of the house siding.

Helen Brownlee, who lived next-door to the Turner residence, testified that on the morning of May 18 she saw five or six boys together in a group in front of the Turner home. She testified that Cornell Fuller was one of the boys. She saw Fuller and one or two other boys go through the front gate of the Turner yard. They went to the rear of the Turner residence. At that time, she saw one of the boys, who was still in front, throw something. She yelled at the boys because she thought they had thrown something at her house. She ran out of her house, onto the front porch, and saw that the Turner house was on fire.

Fourteen-year old Jeffrey Coleman, a friend of one of the Turner children, testified that on the morning of the 18th he left his house at eight o'clock to head for the Turner's residence. When he went through the backyard of a neighbor and approached the Turner's residence from the rear, he saw Zerious Meadows on the Turner's back porch. He saw Cornell Fuller standing inside the backyard by the gate. Coleman testified that he saw Zerious Meadows ignite a rag that was stuffed inside a bottle. Meadows then threw the bottle against the Turner's house, starting a fire. He saw Meadows then strike a match and start another fire. Jeffrey Coleman also testified as follows:

---

**1.** This conviction was affirmed by the Michigan Court of Appeals, *People v. Fuller*, 44 Mich. App. 297, 205 N.W.2d 287 (1973), and by a divided Michigan Supreme Court, *People v. Fuller*, 395 Mich. 451, 236 N.W.2d 58 (1975).

**2.** M.C.L.A. § 750.316; M.S.A. § 28.548 provides:

First Degree Murder—All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery or burglary, shall be murder of the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life.

**3.** M.C.L.A. § 750.72 provides that specific intent is required in order to commit arson:

Any person who willfully or maliciously burns any dwelling house, either occupied or unoccupied, or the contents thereof, whether owned by himself or another, or any building within the curtilage of such dwelling house, or the contents thereof, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years.

M.C.L.A. § 767.39; M.S.A. § 28.979 provides:

Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

Q. Now, after he had struck the match and started the second fire what happened then?

A. Well, he had jumped off the porch and then they ran down the alley towards Kercheval.

Q. When you say they ran down the alley, who ran down the alley?

A. Zerious and Cornell.

Q. Towards Kercheval?

A. Yes, sir.

Q. During the time that Zerious Meadows was throwing the bottle against the side of the house or against the side of the porch and lighting the match which set—started the second fire did you see what Cornell Fuller was doing?

A. He was standing by the gate, looking around.

Q. When you say he was looking around what, exactly, was he doing?

A. I guess he was watching out for Zerious—he had looked to Jefferson and he looked back towards Kercheval.

Q. He looked towards Jefferson and looked back towards Kercheval?

A. Yes, sir.

Q. Did he do that once or more than once?

A. He did it more than once.

Q. He did it more than once—how many times—

THE COURT: Was this the alley gate or the gate toward the front of the house?

A. It was the alley gate.

Q. How many times would you say Cornell Fuller looked towards Jefferson and then looked back towards Kercheval?

A. I wouldn't know.

Q. But it was more than once; is that correct?

A. Yes, sir.

Q. Was it more than twice?

A. Yes, sir.

Q. Now, during the time this was taking place, Jeffrey, did you hear any words spoken between Zerious and Cornell?

A. No.

Q. Did you say anything to them?

A. No.

Q. Now, after—strike that, please—after the second fire began, you testified that Zerious and Cornell left the backyard; is that correct?

A. Yes, sir.

Q. Did they enter the alley?

A. Yes, sir.

Q. Did they enter the alley through the gate that Cornell Fuller was standing by?

A. Yes, sir.

Q. And then they started running; is that correct?

A. Yes, sir.

Q. Were they running together or separately, Jefferey?

A. Together.

Q. And they were running towards Kercheval; is that correct?

A. Yes, sir.

App. 83–86.

On cross-examination, young Coleman testified that he attended "special school", having attended regular public schools only until the third grade. At the time of trial, young Coleman resided in a youth home because, as he stated, he had run away from home. Although Coleman testified that he approached the Turner residence from the rear and then saw the events as related in his testimony quoted above, he may have been one of the boys who were huddled in front of the Turner house shortly before the fire. Prosecution witness Helen Brownlee testified that she thought a "Jeffrey" was with the group of boys. (transcript at 151, 164, 168). In addition, it is undisputed that Coleman failed to warn the Turner's that their house was on fire even though he was at the scene at the time the fire began. Further, Coleman had a fight with one of the Turner children about a month before the fire (transcript at 195–6 and 235), and investigators at least initially were of the view that Coleman was one of the perpetrators of the arson.[4]

4. At the trial of Zerious Meadows, Jeffrey Coleman testified that after the fire he was arrested, taken to a local police precinct, questioned about his involvement and taken to the juvenile

Gary Martin testified that on the morning of the fire Jeffrey Coleman stopped by his house. Martin looked out his window, after Coleman left, and saw Cornell Fuller, Zerious Meadows and four other boys in the alley near the Turner house. A few minutes later, he saw the boys again when they came through a yard running toward the alley. Fuller and Meadows were still in the group. Finally, Jeffrey Coleman returned to Martin's residence and said that the Turner house was on fire.

Detective Sergeant John Roffey testified that he interviewed Mrs. Brownlee the day after the fire. She did not identify anyone at that time as being involved in the fire, and Detective Roffey testified that her in-court testimony, implicating Fuller, was a surprise to him.

The lone witness for the defense was Hattie Fuller, the mother of the petitioner. She testified that on the morning of the fire her son was at home asleep until about 9:00 a. m.

## II

The issue on appeal is whether the foregoing facts are sufficient to sustain the murder conviction of Cornell Fuller. In *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), the Supreme Court held that the due process clause requires that all criminal convictions must be based upon proof beyond a reasonable doubt. In *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court held that this standard has application in the law of habeas corpus:

> [I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 ... the applicant is entitled to habeas

home. *See People v. Meadows*, Recorder's Court No. 71–01558, trial transcript pp. 257–58.

In the instant habeas petition, Fuller alleged that the failure of the prosecutor to disclose the above facts during Fuller's trial, and the failure of the prosecutor to disclose Coleman's juvenile record, deprived Fuller of due process of law. Judge Feikens in granting the petition found it unnecessary to reach this issue.

corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Id.* at 324, 99 S.Ct. at 2792.

In applying this standard in habeas corpus cases, the federal courts must review the evidence in the light most favorable to the prosecution. The petition must be denied if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789. *See also Moore v. Duckworth*, 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979); *Brewer v. Overberg*, 624 F.2d 51 (6th Cir. 1980), *cert. denied*, 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981); *Davis v. Campbell*, 608 F.2d 317 (8th Cir. 1979). The district court recognized that conflicts in the evidence must be resolved in favor of the State, but nevertheless found that the evidence introduced at trial was too meager to support the petitioner's conviction. We agree with the district court's conclusion.

Under *Jackson v. Virginia*, we must examine the sufficiency of the evidence here in support of each element of the petitioner's offense. Fuller was convicted of felony murder in Michigan. A felony murder conviction under M.C.L.A. § 750.316; M.S.A. § 28.548 requires proof of each element of the underlying felony. *People v. Allen*, 39 Mich.App. 483, 494, 197 N.W.2d 874 (1972) (Levin, J., dissenting), *adopted*, 390 Mich. 383, 212 N.W.2d 21 (1973). Thus, Fuller could only be convicted under this statute if the jury could rationally have found him guilty of attempted arson beyond a reasonable doubt.[5]

---

5. *People v. Aaron*, 409 Mich. 672, 733, 299 N.W.2d 304 (1980), abolished the felony-murder rule in Michigan. After this ruling the category of malice arising from the intent to commit a felony was struck down. The Michigan Supreme Court held that malice would have to be independently proven for each element of an alleged offense. However, this decision has prospective effect only, *id.* at 734, 299 N.W.2d 304, and has no effect on petitioner's case.

▉ In Michigan, in order to establish arson, the prosecution must show that a person willfully and maliciously burned a dwelling house. *See* note 3 *supra.* In order to prove attempted arson the prosecution must show that the aider and abettor, "if not himself possessed of the requisite specific intent, ... [at least] rendered his aid and assistance to the principal actor with the knowledge that the principal himself possessed the intent necessary to be guilty of the crime." *People v. Rigsby*, 92 Mich. App. 95, 97, 284 N.W.2d 499 (1979). *See also People v. Gordon*, 60 Mich.App. 412, 231 N.W.2d 409 (1975); *People v. Poplar*, 20 Mich.App. 132, 173 N.W.2d 732 (1969). The Michigan Supreme Court has held:

> Mere presence, even with knowledge that an offense is about to be committed or is being committed, is not enough to make a person an aider or abettor or a principal in the second degree nor is mere mental approval, sufficient, nor passive acquiescence or consent.

*People v. Burrel*, 253 Mich. 321, 323, 235 N.W.2d 170 (1931) (quoting 1 Cyc.Crim.Law [Brill] § 233); *People v. Casper*, 25 Mich. App. 1, 5, 180 N.W.2d 906 (1970). In other words, the accused must take some conscious action designed to make the criminal venture succeed in order to be guilty of aiding and abetting. *People v. Cooper*, 326 Mich. 514, 40 N.W.2d 708 (1950); *People v. Gordon*, 60 Mich.App. 412, 418, 231 N.W.2d 409 (1975).

▉ The district court correctly concluded that the evidence introduced at petitioner's trial only showed that on the morning of May 18 Fuller was present at the Turner residence along with Zerious Meadows and the other boys. The evidence showed that Fuller looked around while Meadows started the fires. But as Judge Feikens pointed out:

> This *suggests*, as Jeffrey Coleman surmised, that the petitioner *may have been* acting as a lookout for Meadows. It is reasonable speculation. But could a rational jury find it to be proof beyond a reasonable doubt? No evidence was presented that the petitioner intended to burn the Turner home. The evidence that he knew that Zerious Meadows planned to do is simply too meager to support conviction. (emphasis in original)

We note that there was no evidence at trial that the "Molotov cocktail" which started the fire was prepared in advance, or, if it was, whether any of the boys other than Zerious Meadows knew that the "Molotov cocktail" existed. There was of course no evidence that any of the boys, except Fuller, participated in the manufacture of the "Molotov cocktail".

Moreover, there was no direct evidence that the youths approached the Turner house with intent to set the house on fire. Assuming Zerious Meadows had this intent, however, there was no evidence that it was shared by petitioner or the other boys.

The only direct evidence supporting the State's contention that Fuller "stood guard and acted as a lookout" for Zerious Meadows was Jeffrey Coleman's testimony that over a period of several minutes Fuller turned his head from side to side "more than twice." We agree with the district court that this is insufficient to establish beyond a reasonable doubt that Fuller took conscious action to aid Meadows' commission of arson.

Accordingly, the judgment of the district court granting the petition for habeas corpus is affirmed.

WEICK, Circuit Judge, dissenting:

I respectfully dissent. Petitioner Fuller was convicted by a jury in the Recorder's Court of Detroit, Michigan, as an aider and abettor of the arson murder of one of two young girls who died in the fire. His defense was an alibi and in his motion for judgment of acquittal filed after the verdict, he challenged the sufficiency of the evidence. The presiding judge of the Recorder's Court denied his motion. In his opinion and order denying Fuller's motion for a new trial, the Judge of the Recorder's Court stated, *inter alia* :

It was not contended that the defendant was the one who threw the fire bomb which burned the house, but the evidence established that he was the look-out while Zerious Meadows (subsequently tried in a separate case on this same charge) threw the fire bomb and set a fire by pouring gasoline on the dwelling in question.

Defense counsel in his Motion for a New Trial makes much of the fact that Cornell Fuller was only seen to run to the alley of the premises here involved and look up and down the alley, but the evidence also indicated that he was the look-out and, therefore, an accessory to the crime, equally chargeable as a principal under Section 767.26, Compiled Laws, 1948.

Upon appeal to the Michigan Court of Appeals, the court held, in a unanimous opinion in *People v. Fuller*, 44 Mich.App. 297, 205 N.W.2d 287 (1973):

1. Homicide—Murder—Evidence—Inferences.

    A jury could reasonably infer that the defendant was a party to the offense of aiding and abetting in the commission of murder where he was shown to have come to the scene in the company of the principal, stood at a gate near the alley behind the house while the principal lit and threw a Molotov cocktail, looked up and down the alley more than once, and ran from the scene with the principal.

Presiding Judge Quinn, who wrote the opinion for the court stated:

The first issue is a weight of the evidence question. Our inquiry is, was evidence produced which, if believed, could certainly lead to a reasonable inference that defendant was a party to the offense? *People v. Ford*, 19 Mich.App. 519 [173 N.W.2d 3] (1969). There was evidence that defendant came to the scene with Meadows and others; that defendant stood at a gate near the alley behind the house while Meadows lit and threw the Molotov cocktail; that during this time, defendant looked up and down the alley more than once; and that defendant ran from the scene with Meadows. From these facts a jury could reasonably infer that defendant was a party to the offense.

The Supreme Court of Michigan in *People v. Fuller*, 395 Michigan 451, 236 N.W.2d 58 (1975), affirmed the conviction in a split decision holding:

Cornell Fuller was convicted by a jury in Recorder's Court of Detroit, Thomas L. Poindexter, J., of first-degree murder. The prosecution contended that he aided and abetted, by acting as a lookout, in an arson which resulted in the death of two girls. The Court of Appeals, Quinn, P. J., and V. J. Brennan and O'Hara, JJ., affirmed (Docket No. 11308). Defendant appeals. *Held*:

1. A jury may believe or disbelieve, in whole or in part, any of the evidence presented.

2. Evidence was presented which, if believed by the jury, showed that the defendant acted as a lookout for the arsonist.

3. The jury determined that the prosecution had negated every reasonable theory consistent with the defendant's innocence of the crime charged.

Conviction affirmed.

It is noteworthy that in affirming the conviction, the Supreme Court of Michigan held that the jury determined that the prosecution had negated every reasonable theory consistent with the defendant's innocence of the crime charged. The Supreme Court of the United States held that this was more than the constitutional requirement in *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S.Ct. 2781, 2793, 61 L.Ed.2d 560 (1979), *citing Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954). In other words, the Michigan Supreme Court in affirming the conviction applied a standard of review more strict than the constitution requires and petitioner received the benefit of this erroneous standard. The decision of the Michigan Supreme Court is entitled to great weight since it applied a standard of review more strict than required by the constitution, *Jackson v. Virginia, supra*, 443 U.S. p. 326, 99 S.Ct. p. 2793.

At his trial, petitioner's counsel did not object to any of the instructions of the trial court to the jury. His sole defense was alibi. In his opening statement to the jury, counsel for Fuller stated:

As indicated by the Court, he (Fuller) is not named as the party who threw the incendiary device against this building; he was merely named as a party who was standing by, but you must be convinced as to his identity; that he was, in fact, the party that was an accessory to this crime and standing by.

Now, on behalf of the defendant, we will produce witnesses that will establish his whereabouts at the time of this incident. They will testify that he was at a place other than the home of the Taylor's on May 18, 1970—

THE COURT: I think it is the Turner home, Mr. Reilly.

MR. REILLY: Sorry, your Honor, the home of the Turner's—this incident occurred early in the morning. The witnesses will testify that the defendant was in bed—home in bed asleep.

Now, the Prosecutor has a different approach to this; it is a question of who you believe—who is telling the truth which is very often a different task to decide but I think the defense will clearly indicate that the defendant was, in fact, in bed the Morning that this incident occurred. Aiding and abetting—aided and abetted—the legal concept, as the Court indicated, that would mean somebody that is a party to an incident—I think you are all familiar with that. You must be firmly convinced that the defendant was the party who aided and abetted in this incident. There is no question here as to the fact that the incident occurred and the deaths were a result of this incident and the Prosecution will show that the burning, in fact, did take place and the deaths were a result of the burning—the burning emanated from an incendiary device, commonly known as a Molotov cocktail. Testimony will be given with regard to a chemical analysis as to what happened. That is not the issue; the issue is the tragic incident, a very sordid situation where the deaths were pitiful. There is no question about that. The question is whether or not the defendant, in fact, was the party standing at the scene. That is the only question that you have to find—the fact you have to determine.

It is indeed conceivable that the witnesses that will testify that they saw the defendant at the scene could have been mistaken. I want you to consider that also.

Fuller's only witness as to the alibi was his mother who testified that petitioner was home sleeping on his bed at the time the arson was committed. The only trouble with the mother's testimony was that it conflicted with the testimony of three other witnesses. Fuller did not testify although he was present in court at the trial. It was solely for the jury to decide who was telling the truth.

The decision of the Supreme Court of Michigan is final that Fuller's conviction was in conformity with the law of the State of Michigan and it is binding on federal courts with respect not only to the factual findings but also as to the law of the State. 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

There was abundant proof offered by the state to support the finding of the jury that Fuller not only accompanied the arsonist to the dwelling set on fire, but also acted as a lookout. After the dwelling had been set on fire, the arsonist and Fuller ran away together. If Fuller was innocent of any wrongdoing, why did he run away?

Every element of the crime of aiding and abetting the arsonist was proven beyond a reasonable doubt as was held by the Supreme Court of Michigan and is in conformity with the decision of the Supreme Court of the United States in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In a habeas corpus proceeding, the federal courts do not have jurisdiction for direct appellate review. In almost every criminal trial in the state, as well as federal courts, the evidence is conflicting and must

be resolved. In a collateral proceeding as was held by the Supreme Court in *Jackson v. Virginia, supra,* the evidence must be viewed in the light most favorable to the prosecution and the habeas petition denied if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* 443 U.S. at 319, 99 S.Ct. at 2789. This standard applies retroactively. *Pilon v. Bordenkircher,* 444 U.S. 1, 100 S.Ct. 7, 62 L.Ed.2d 1 (1979). The standard was incorrectly applied by the district court when it granted the writ.

With the abundance of evidence in the present case, together with the inferences properly deducible therefrom, I submit that the jury did not act irrationally in finding the defendant Fuller guilty as an aider and abettor, nor did the trial judge in denying the motion for judgment of acquittal and in sentencing the defendant, nor did the three judges of the Michigan Court of Appeals in affirming the judgment of conviction. Nor did the majority of the judges of the Supreme Court of Michigan in affirming the judgment of the Michigan Court of Appeals.

I submit again that the federal courts in habeas proceedings are bound by the factual findings of the state courts. We are deluged with habeas corpus proceedings, most of which involve the issue as to the sufficiency of the evidence. The rule formerly was the no evidence standard which authorized collateral intervention only where there was no evidence at all to support an important element of the crime. The no evidence standard was modified to the "rational trier of fact" standard, *Jackson v. Virginia, supra,* but this new standard has not stemmed the tide which appears to be increasing and has added to the confusion.[1]

---

1. Footnote 7 in *Jackson v. Virginia* states:

   And the Court of Appeals for the Sixth Circuit recently recognized the possible impact of *Winship* on federal habeas corpus in a case in which it held that "a rational trier of fact could have found the defendant . . . guilty beyond a reasonable doubt." *Spruytte v. Koehler,* affirmance order, 590 F.2d 335 [CA6]. An even more recent case in that court provoked a lively debate among three of its members regarding the effect of *Winship* upon federal habeas corpus. The writ was granted in that case, even though the trial record concededly contained "some evidence" of the applicant's guilt. See *Speigner v. Jago,* 603 F.2d 1208 (CA6).

   In *Speigner,* the victim was kidnapped, robbed and brutally beaten and shot with a pistol and shotgun by the two criminals, Roger Scott and Henry Speigner, alias Frank Mathews. He was shot in the chest with a pistol and in the back of the head and neck with a shotgun. The two criminals then stole the victim's automobile and dumped his body in a street in Cleveland and then proceeded directly to Youngstown, Ohio, where they were arrested later in the same day by state police. Scott told the police that he rented the automobile from the victim for $15.00. The back seat of the automobile was covered with the victim's type blood and the automobile was damaged. Speigner when arrested was seated in the passenger's seat. The shotgun was under his seat. Speigner was convicted of murder by a jury in the state court, which was affirmed by the state appellate court and leave to appeal was denied by the Supreme Court of Ohio on the ground that there was no debatable constitutional question. The district court granted a writ of habeas corpus which the court affirmed with a dissent, as above indicated, and Speigner was set free.

   Speigner's cohort Scott was likewise convicted in the state court which conviction was affirmed by the state appellate court and appeal denied by the Supreme Court of Ohio. The district court granted Scott's application for a writ of habeas corpus and upon appeal to this court the judgment of the district court granting the writ of habeas corpus was reversed, the cause remanded for further proceedings consistent with the opinion, this court distinguishing *Speigner* on the basis of additional evidence linking Scott with the crime not shown in *Speigner. Perini v. Scott,* (6th Cir. 1981, No. 80-3219). Thus one murderer was set free by decision of this court while his confederate was not granted relief.

   Another case involving a criminal who was set free by habeas relief in a split decision of this court. He had stabbed his former girlfriend some 45 times with a pen knife permanently maiming her and had been convicted in the state court of attempted murder. His conviction had been affirmed by the Michigan Court of Appeals and leave to appeal denied by the Michigan Supreme Court. The district court denied habeas relief and we reversed for an alleged trivial error in an unobjected to charge of the court to the jury. *Burton v. Bergman,* 649 F.2d 428 (6th Cir.). Burton did not even testify and the victim's testimony was unrefuted. The case should also have been

I would reverse the district court's grant of the writ of habeas corpus and remand for dismissal of the petition.

affirmed on the ground that the alleged error in the court's instruction, if any, was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).