No. 81–855.   ANDERSON, WARDEN *v.* FULLER.   C. A. 6th Cir.   Motion of respondent for leave to proceed *in forma pauperis* granted.   Certiorari denied.

Opinion of JUSTICE STEVENS respecting the denial of the petition for writ of certiorari.

Although I believe that *Jackson* v. *Virginia*, 443 U. S. 307, was decided incorrectly, it is not at all clear to me that the Court of Appeals in this case misapplied the dicta in the Court's opinion in *Jackson*.   The Court of Appeals did not purport to resolve any conflict in the evidence.   Quite properly it attached no weight to the fact that the defendant did not testify, or to the fact that his mother may have testified falsely in support of an alibi defense.   Neither of those facts is affirmative evidence of guilt.

Based on their duty to "review the evidence in the light most favorable to the prosecution," 662 F. 2d 420, 423 (CA6 1981), a majority of the judges of the Court of Appeals concluded—as had the District Court and two of five justices of the Michigan Supreme Court—that there was insufficient evidence in the record that the respondent had intended to commit a crime.   It is quite misleading to describe the slim record in this case as "a classic case of conflicting evidence,"

*post*, at 1031, or to imply that these conscientious federal judges chose "to sit as a jury and set aside the lawful jury's findings of fact." *Post*, at 1033. What the Court of Appeals did conclude was that evidence that the respondent, like several other boys, was present at the scene of the crime was legally insufficient to permit any rational trier of fact to find beyond a reasonable doubt that respondent was a participant in that crime. See 662 F. 2d, at 423. The essence of the Court of Appeals decision is explained in the following few paragraphs:

> "The district court correctly concluded that the evidence introduced at petitioner's trial only showed that on the morning of May 18 Fuller was present at the Turner residence along with Zerious Meadows and the other boys. The evidence showed that Fuller looked around while Meadows started the fires. But as Judge Feikens pointed out:

> "'This *suggests*, as Jefferey Coleman surmised, that the petitioner *may have been* acting as a lookout for Meadows. It is reasonable speculation. But could a rational jury find it to be proof beyond a reasonable doubt? No evidence was presented that the petitioner intended to burn the Turner home. The evidence that he knew that Zerious Meadows planned to do *[sic]* is simply too meager to support conviction.' (emphasis in original)

> "We note that there was no evidence at trial that the 'Molotov cocktail' which started the fire was prepared in advance, or, if it was, whether any of the boys other than Zerious Meadows knew that the 'Molotov cocktail' existed. There was of course no evidence that any of the boys, except Fuller *[sic]*, participated in the manufacture of the 'Molotov cocktail'.

> "Moreover, there was no direct evidence that the youths approached the Turner house with intent to set the house on fire. Assuming Zerious Meadows had this

intent, however, there was no evidence that it was shared by petitioner or the other boys.

"The only direct evidence supporting the State's contention that Fuller 'stood guard and acted as a lookout' for Zerious Meadows was Jefferey Coleman's testimony that over a period of several minutes Fuller turned his head from side to side 'more than twice.' We agree with the district court that this is insufficient to establish beyond a reasonable doubt that Fuller took conscious action to aid Meadows' commission of arson." *Id.*, at 424.

In my judgment it would not be an appropriate use of this Court's scarce resources to grant certiorari and review every record in which a federal court makes a conscientious effort to apply the dictates of *Jackson* v. *Virginia*. For that reason, without reaching the question whether I would have decided this case the same way the Court of Appeals did had I been a member of that court, I think this Court wisely denies certiorari.

CHIEF JUSTICE BURGER, with whom JUSTICE O'CONNOR joins, dissenting.

Respondent Fuller was convicted of felony murder in 1970, following a fire in which two children died. The fire occurred on the morning of May 18, 1970. The prosecution's evidence showed that Fuller served as a lookout while Meadows set the fire. Fuller was 17 years old at the time. A neighbor testified that she saw Fuller, along with a few other boys, standing in front of the Turner house on the morning of the fire. A 14-year-old, Coleman, testified that he saw Fuller and Meadows behind the house. Meadows was on the back porch. As Coleman watched, for 5 or 10 minutes, Meadows stuffed a rag inside a bottle, ignited the rag, and threw the bottle against the house, starting a fire. Meadows then set another fire. Fuller, meanwhile, stood by a gate leading from the backyard to an alley. Coleman testified that Fuller looked up and down the alley while Meadows was setting the fires. Fuller and Meadows then left the yard

through the gate and ran down the alley together. Coleman went to the house of a friend, Martin, and reported that the Turner house was on fire.

The defense moved for a directed verdict of acquittal at the close of the State's evidence. The trial judge ruled that the evidence against Fuller established a prima facie case and denied the motion.

The defense put on one witness, Fuller's mother. She testified that Fuller was at home asleep until 9 o'clock on the morning of the fire; therefore, he could not have been involved in setting the fires. The defense case was based solely on this alibi and an attempt to discredit Coleman's testimony. Defense counsel told the jury that the only real issue in the case was whether Fuller or someone else was standing behind the Turner house.

There was no challenge to the trial judge's instructions on reasonable doubt and the presumption of innocence. This, then, was a classic case of conflicting evidence in which the jury had to pass on the credibility of the witnesses. The jury returned a verdict of guilty. The verdict shows the jury did not believe Fuller's mother and accept his alibi defense. The jury obviously accepted as true the testimony of Coleman and the testimony of two other witnesses who said that they saw Fuller at the scene on the morning of the fire. The trial judge denied a motion for a new trial, and Fuller received a mandatory life sentence as an accessory to murder by arson. Meadows was convicted of first-degree murder in a separate trial.

Fuller appealed directly to the Michigan Court of Appeals, which unanimously affirmed the conviction. *People* v. *Fuller*, 44 Mich. App. 297, 205 N. W. 2d 287 (1973). It held that the evidence was sufficient to convict Fuller because, if the jury believed Coleman, it could reasonably conclude that Fuller acted as a lookout for Meadows. A divided Michigan Supreme Court affirmed. 395 Mich. 451, 236 N. W. 2d 58 (1975). It also noted that evidence was presented, which, if believed by the jury, showed that Fuller acted as a lookout.

In another in a series of cases in which federal courts retry issues of fact and credibility, the District Court for the Eastern District of Michigan granted Fuller's application for a writ of habeas corpus under 28 U. S. C. § 2254. The court purported to apply *Jackson* v. *Virginia*, 443 U. S. 307 (1979). It noted that *Jackson* held that habeas relief could only be granted if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.*, at 324. The District Court then reviewed and reweighed the evidence presented at trial and concluded that the evidence which persuaded 12 jurors, who heard all the evidence and observed the demeanor of *all* the witnesses, was too meager to support the prosecution's contention that Fuller acted as a lookout. The District Court relied heavily on the fact that no evidence was presented to show Fuller knew that Meadows planned to burn the Turner home; Fuller, of course, did not take the stand.

A divided Court of Appeals for the Sixth Circuit affirmed. 662 F. 2d 420 (1981). That court again reweighed the evidence which 12 jurors found sufficient under instructions not questioned. Like the District Court, two of the members of the panel concluded that there was insufficient evidence presented to establish that Fuller knew Meadows intended to commit arson.

Dissenting, Judge Weick cogently contended that the federal courts were improperly usurping the function of the state-court jury. If the jury which saw and heard the witnesses chose to believe Coleman's testimony, it was reasonable to infer that Fuller acted as a lookout for Meadows. The jury clearly chose to believe Coleman, just as it chose to disbelieve Fuller's alibi.

The District Court and the Court of Appeals incorrectly applied *Jackson*. There we held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a rea-

sonable doubt." 443 U. S., at 319. It is sheer nonsense to suggest that, on this record, the 12 jurors acted irrationally. With all respect, I suggest that the District Court and the Court of Appeals' majority forgot that it is the function of the jury to determine who is telling the truth. Judges betray their function when they arrogate themselves over the legal factfinder. Either we accept the jury system with the risk of human fallibility or we ought to change the structure of the system and redefine the standard of review under the habeas corpus statutes. The District Court and the Court of Appeals did not view the evidence in the light most favorable to the prosecution, as the law and their oaths require. If they had, they could not have rationally concluded that the jury could not reasonably reach the result it reached. Instead, the courts reweighed Coleman's testimony, noting that he was young, that he had been placed in a youth house because he ran away from home, and that he attended a "special school." Put simply—and bluntly, as this case demands—the federal judges who set aside this state-court judgment acted like jurors, not jurists.

This Court cannot sit as a court of errors to correct every mistake by other courts. But the decision here warrants consideration by this Court because the courts have misapplied *Jackson* in a way that threatens to lead to reversals of state-court criminal convictions whenever a federal court chooses to sit as a jury and set aside the lawful jury's findings of fact. There was a flagrant refusal here to review the evidence in the light most favorable to the prosecution, as the law commands. *Jackson* did not authorize such gross interference with the functioning of state criminal justice systems.

I would grant certiorari and reverse the decision below, with appropriate reminders to my colleagues as to certain fundamental propositions concerning their role. Our heavy docket is an insufficient reason to allow this erroneous judgment to stand.