KAREN NELSON MOORE,
dissenting.
The prosecution’s theory in this case is a convenient one. The prosecution says that Tony Davis acted as a lookout while Marco Washington committed a carjacking on March 27, 2002. But, as the prosecution acknowledges, all Davis did was walk into a nearby restaurant before the carjacking, stand at a window in the restaurant with a glass of water, and leave with Washington after the carjacking. In other words, the prosecution’s theory is that Davis was a lookout who never needed to sound the alarm, and it sought to prove Davis’s guilt through speculation alone. “The web of inference[s] is too weak on these facts,” however, “to permit any rational trier of fact, absent sheer speculation, to find beyond a reasonable doubt ” that Davis acted in support of the impending carjacking. United States v. Sliwo, 620 F.3d 630, 637 (6th Cir.2010) (internal quotation marks omitted).
To the contrary, the evidence presented by the prosecution here does not provide a reasonable basis for inferring that Davis was present for the specific purpose of acting as a lookout. If it did, then all that the prosecution would need to establish at trial in order to attain a conviction for aiding and abetting is proof that an individual was present at the scene of the crime and acquainted with the perpetrator. Under the standard of reasonable doubt, however, we must distinguish between unsubstantiated speculation and reasonable inference. Patrolling the border between the two is essential to avoid unreasonably applying the sufficiency-of-the-evidence standard set out in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Because I believe that the state court has unreasonably applied the Jackson standard by permitting mere speculation to suffice in proving guilt, I respectfully dissent.
*543 I. BACKGROUND LAW
Following the standard set forth in AEDPA, the critical question in this case is whether the Michigan trial court’s denial of Davis’s claim of insufficient evidence was contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1). I agree with the district court that the state court incorporated the proper federal standard, the sufficiency-of-the-evidence standard set out in Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). As a result, the state court’s decision was not contrary to clearly established law. I believe, however, that the state court’s determination that there was sufficient evidence for a rational trier of fact to infer that Davis acted as a lookout was an unreasonable application of that federal standard.
“The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt” of each element of the offense. Jackson, 443 U.S. at 309, 99 S.Ct. 2781; see also In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (“[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.”). This “doctrine requires more than simply a trial ritual,” it requires “that the factfinder will rationally apply the standard to the facts in evidence.” Jackson, 443 U.S. at 316-17, 99 S.Ct. 2781. Nonetheless, “a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt.” Id. at 317, 99 S.Ct. 2781. “[Wjhen such a conviction occurs in a state trial, it cannot constitutionally stand.” Id. at 318, 99 S.Ct. 2781.
As a safeguard, a court faced with a sufficieney-of-the-evidenee claim must determine “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. at 319, 99 S.Ct. 2781. This “standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.” Id. at 324 n. 16, 99 S.Ct. 2781. Furthermore, in a case governed by AEDPA, if the evidence is not sufficient to support a conviction, we must next “ask whether the state court was objectively unreasonable in concluding that a rational trier of fact could find [the defendant] guilty beyond a reasonable doubt.” Stewart v. Wolfenbarger, 595 F.3d 647, 653 (6th Cir.2010) (internal quotation marks omitted). See also Williams v. Taylor, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (“Stated simply, a federal habeas court making the ‘unreasonable application’ inquiry should ask whether the state court’s application of clearly established federal law was objectively unreasonable.”).
In Michigan,,a conviction for aiding and abetting a crime requires the state to prove beyond a reasonable doubt that
(1) the crime charged was committed by the defendant or some other person, (2) the defendant performed ■ acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended it when the defendant gave aid or encouragement.
Brown v. Palmer, 441 F.3d 347, 351 (6th Cir.2006) (citing People v. Carines, 460 Mich. 750, 597 N.W.2d 130, 135 (1999)). “Aiding and abetting” consists of all forms of assistance rendered to the perpetrator of a crime, including all words or deeds that might support, encourage, or incite the commission of a crime. Carines, 597 *544 N.W.2d at 135. “Although intent is a required element for the aiding-and-abetting offense, intent may be inferred from circumstantial evidence.” Brown, 441 F.3d at 351 (citing People v. Wilson, 196 Mich.App. 604, 493 N.W.2d 471, 476 (1992)); Carines, 597 N.W.2d at 135 (holding intent may be inferred from all facts and circumstances). Several factors may be considered in determining intent, including “a close association between the defendant and the principal, the defendant’s participation in the planning or execution of the crime, and evidence of flight after the crime.” Carines, 597 N.W.2d at 135 (internal quotation marks omitted).
There are limits, however, to how far inferences can be stretched from circumstantial evidence. Significantly, “[m]ere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to show that a person is an aider and abettor.” Wilson, 493 N.W.2d at 476; Brown, 441 F.3d at 351. The Michigan Supreme Court has also held that “mere mental approval, ... passive acquiescence or consent” are insufficient to find a person an aider and abettor. Fuller v. Anderson, 662 F.2d 420, 424 (6th Cir.1981) (quoting People v. Burrel, 253 Mich. 321, 235 N.W. 170 (1931)). “In other words, the accused must take some conscious action designed to make the criminal venture succeed in order to be guilty of aiding and abetting.” Id. (emphasis added).
Finally, under Michigan law, “[a] person cannot be convicted as an aider and abettor on the basis that he was an accessory after the fact.” Hopson v. Foltz, No. 86-1155, 818 F.2d 866 (table), 1987 WL 37432, at *2 (6th Cir. May 20, 1987) (citing People v. Lucas, 402 Mich. 302, 262 N.W.2d 662, 662-63 (1978)). Aiding and abetting of the crime must occur before or during the commission of the crime. People v. Smith, Nos. 204474, 204476,1999 WL 33453995, at *8 (Mich.Ct.App. Mar. 12, 1999).
A prior post-AEDPA habeas case from this court provides useful guidance. In Brown v. Palmer, this court, applying Michigan law, held that there was insufficient evidence that the defendant had aided and abetted carjacking.[1] 441 F.3d at 351-53. The facts presented at trial consisted of the following:
(1) Brown was present before and during the carjacking, (2) he and the perpetrator were in the car together before the perpetrator committed the offenses, (3) he stared at the victims while the perpetrator fired the shots, (4) he never got gas even though he was parked near a gas pump, (5) he attempted to flee as soon as the perpetrator drove off in the car, and (.6) he failed to contact the police to retrieve his car.
Id. at 351. The Brown court concluded that the evidence “clearly demonstrates that Brown was present at the scene and had some acquaintance with the perpetrator. Beyond that, however, the evidence *545 pointing to Brown’s guilt becomes quite speculative.” Id. ■ In addition, the Brown court reasoned that flight from the scene was insufficient to support a finding of guilt. Id. When a person flees from law enforcement, a jury may draw a reasonable inference of guilt, but when a person merely flees the scene of a crime, such a speculative leap ceases to provide reasonable evidence of guilt. Id. Thus, “[a]l-though the facts viewed in the light most favorable to the state may have created ‘reasonable speculation’ that Brown aided and abetted the carjacking and armed robbery,” there were no facts “demonstrating that Brown in fact provided assistance or encouragement to the perpetrator.” Id. at 352. '
The Brown court also found persuasive two other eases from this court, both of which addressed similarly speculative evidence that was insufficient to support a conviction. In Fuller v. Anderson, the petitioner allegedly acted as a lookout while another person committed arson by throwing a Molotov cocktail at the victim’s home. 662 F.2d at 421-23. Evidence was presented that the petitioner “stood guard,” “turned his head from side to side more than twice,” and ran away with the perpetrator after the arson. Id. at 424. Yet the Fuller court held that, although this evidence permitted speculation that the petitioner was involved in the crime, there was no evidence from which a jury could reasonably infer that the petitioner intended to burn the home. Thus, the evidence was “insufficient to establish beyond a reasonable doubt that Fuller took conscious action to aid [the perpetrator’s] commission of arson.” Id.
In Hopson v. Foltz, the petitioner was tried for aiding and abetting second-degree murder in Michigan. 1987 WL 37432, at *1. At trial, the government presented evidence that: the petitioner and victim were seen with two other individuals arguing in a bar when a comment was made to the victim implying .a threat of serious injury; just prior to the shooting, the petitioner and victim were seen arguing on a street corner; the perpetrator arrived in a car and removed a gun from his trunk; several shots were fired; and the petitioner was observed leaving an alley and walking to his house where he appeared to hand something to someone inside. Id. The state theorized that the petitioner had takén spent shotgun shell casings to the individual in the house. Id.
Nonetheless, the Hopson court held that the testimony “indicates at most [that the petitioner] was present at the shooting, that he may have argued with the victim during the evening prior-to the shooting, that he may have known that someone else intended to harm [the victim], and that he may have taken the empty shell casing after the shooting.” Id. at *2. The court found that there was no proof that the petitioner acted in concert with the perpetrator or that he “did anything to support, encourage, or incite the commission of the crime.” Id. The Hopson court therefore concluded that, although the petitioner’s statements may have shown animus, they could not be construed as encouragement. Id. at *2. Furthermore, although taking the shell casings may have rendered Hop-son an accessory after the fact, the evidence could not support a conviction as an aider and abettor. Id. The evidence, according to the court, was simply insufficient to establish guilt beyond a reasonable doubt. Id.
II. THE EVIDENCE
With these cases in mind, a close look at the circumstantial evidence in this case shows that the state court’s application of Jackson v. Virginia to Davis’s conviction was “objectively unreasonable.” Williams, 529 U.S. at 409, 120 S.Ct. 1495. The case against Davis comes down to *546 evidence that Davis was present for the commission of the carjacking, was acquainted with the perpetrator, and was found working on the car after the crime. The prosecution adduced no evidence that Davis acted in a way that would indicate specifically that he functioned as a lookout. At most, the evidence indicates that Davis knew or had reason to know of the carjacking; it provides no basis, however, for a jury to conclude beyond a reasonable doubt that Davis did anything to assist the commission of the crime. Because “mere presence, or even knowledge; that a crime is about to be committed is insufficient to prove guilt under an aiding-and-abetting theory,” Brown v. Palmer, 441 F.3d 347, 351 (6th Cir.2006), the conviction violates due process. A contrary result cannot be reconciled with this court’s prior decisions.
Association. Although the facts establish that Davis was at the scene, Brown makes clear that presence alone is not enough to infer participation. The majority attempts to distinguish Brown by pointing to the fact that Davis and Washington arrived at the scene together. From their arrival together, the majority derives “a compelling inference that [Davis and Washington] were previously acquainted.” Maj. Op. at 533. As an initial matter, the defendant in Brown claimed that he had just met the perpetrator, and the prosecution could not prove otherwise because they never discovered the perpetrator’s identity. Brown, 441 F.3d at 349, 353. The Brown court noted, moreover, that, “the evidence clearly demonstrates” that the defendant and perpetrator had “some acquaintance.” Id. at 351. In any event, this factual distinction is not material. The fact that one man knows another does not permit a reasonable inference that the first participated in the second’s scheme. Only by making a series of tenuous inferential jumps can mere acquaintance provide proof that an individual acted in support of the commission of another’s crime.
The majority also decries “the lack of any proof to refute the circumstantial evidence that Davis and Washington were previously acquainted.” Id. at 533. This, however, is simply an attempt to double-count the evidence of their acquaintance. Davis does not bear the burden of disproving his guilt. Even if Davis were a lookout who simply never needed to sound the alarm, the prosecution must still prove that he in fact served as a lookout. Under the majority’s opinion, an acquaintance passively present at the scene must prove that her innocent actions were in fact innocent.
The fact that Davis and Washington arrived at the scene together therefore does almost nothing to show that Davis acted as a lookout. It certainly is not enough to overcome reasonable doubt.
Observation. Nor is there evidence that Davis engaged in incriminating behavior while the carjacking was taking place. During the carjacking, the evidence establishes that Davis entered the restaurant, ordered water, and remained in the restaurant until the crime was over. The prosecution asserts that this is circumstantial evidence of Davis’s role as a lookout. But the Fuller court determined that more is required to overcome reasonable doubt. In Fuller, testimony that the defendant stood near the crime scene and looked around for several minutes while watching the perpetrator commit the crime was insufficient to establish proof that he acted as a lookout. In this case, there is no evidence that Davis even looked around, much less that he signaled to Washington in any way.
Similarly, in Brown, evidence that the defendant stared at the crime as it unfolded was insufficient to support a finding of guilt. In this ease, one of the victims testified that Davis stood at the window during the crime. The testimony does not *547 identify which window Davis was standing near — the large window that forms part of the restaurant’s facade or the service window inside the restaurant. The prosecution presented no testimony that Davis faced the parking lot or even looked in the direction of the crime scene. Nor did the prosecution suggest that Davis took any action to prevent anyone in the restaurant from leaving or seeing the crime taking place — ie., there was no evidence that Davis created a distraction. In any event, assuming that Davis was watching the crime from the large front window of the restaurant, we held these same facts in Brown — watching the crime as it unfolded- — -to be insufficient evidence of aiding and abetting.
Coordination. In the majority’s view, Davis’s actions during the carjacking show that Davis was able to “closely coordinate!] ]” his actions with Washington’s because he was “watching the carjacking unfold.” Maj. Op. at 533. In support of this notion, the majority points out only that Davis exited the Cavalier at the same time as Washington and that Davis left the restaurant right after Washington committed the carjacking. To be sure, there is testimony that Washington drove up to the restaurant after the carjacking and that Davis left the restaurant and entered the stolen vehicle. Washington then drove the car away. This testimony permits the inference that Davis was aware that the carjacking had been committed. But that Davis knew the crime was committed after the fact says nothing about what he did in support of its commission. Indeed, there is no evidence that Davis did something particular to the role of a lookout. Without this evidence, the prosecution has not proved its case that Davis acted in support of the carjacking as opposed to his merely being present for and failing to object to the commission of the crime. Again, the majority here relies on evidence of association to infer guilt because there is no other evidence linking Davis to the actual planning or commission of the carjacking.
The majority also finds inferences to be drawn from the fact that “Davis fled the scene in the stolen vehicle” and he “purposely chose to enter the SUV that he had just seen his companion carjack,” rather than the Cavalier. Maj. Op. at 533. In both Brown and this case, the defendant and perpetrator were seen together before commission of the crime, the defendant allegedly stood watch during the crime, and the defendant fled. Flight from the scene of a crime, however, is “fully consistent with [a defendant’s] desire to avoid a confrontation with” anyone nearby. Brown, 441 F.3d at 352. It is thus “distinguishable from the inference of guilt that arises when one flees from a law enforcement officer.” Id. Here, the victims of the crime were still in the parking lot. Consequently, the fact that Davis left the restaurant and got into the car does not establish that Davis was encouraging, supporting, or inciting the carjacking. It therefore would not permit any rational juror to conclude beyond a reasonable doubt that Davis acted as a lookout.
Indeed, the facts in Brown were more suggestive of guilt than the facts in this case. In Brown, the prosecution presented direct evidence that the defendant watched the crime take place and fled the establishment without using any of its services. Here, the evidence established only that Davis stood by a window and left with the defendant. Yet the Brown court granted the writ of habeas corpus, despite applying AEDPA deference, because “none of this evidence suggests that Brown assisted or encouraged the gunman in the ... carjacking.” Brown, 441 F.3d at 353. These facts alone could not prove that the defendant acted as a lookout because merely being present at the scene was insufficient to establish beyond *548 a reasonable doubt that Brown aided and abetted the crime. As in Brown, it is unreasonable to conclude that this evidence establishes beyond any reasonable doubt that Davis acted as a lookout.
Post-Crime Conduct. Finally, the fact that Davis was found stripping the car several hours after the crime does not reasonably lead to the conclusion that Davis encouraged Washington in the commission of the carjacking. This fact provides evidence that Davis was an accessory after the fact; however, assisting after the fact is not sufficient to find Davis guilty of aiding and abetting the carjacking crime itself. See Hopson, 1987 WL 37432, at *2 (holding that post-crime conduct does not support finding beyond a reasonable doubt that defendant aided crime). After-the-fact-assistance, without more, shows only that Davis was aware of, but merely acquiesced in, the carjacking by Washington. It therefore does nothing to remove the reasonable doubt of any rational juror concerning whether Davis actually was a lookout.
* * *
Ultimately, the majority cannot identify precisely what Davis did in support of the carjacking. The majority states that a reasonable jury could find that “Davis served as a lookout and/or helped plan the carjacking.” Maj. Op. at 534. At another point, the majority speaks of “the strong circumstantial evidence that Davis was involved in the planning and execution of the carjacking.” Id. at 535. Surely a “strong” inference that he was “involved” — without a more precise explanation of his role in the offense- — cannot suffice to show criminal liability. The majority’s reasoning simply fails to focus on what the evidence actually shows about Davis’s alleged acts in support of the crime of aiding and abetting the carjacking. This imprecision belies the difficulty in piling inference upon inference from unrevealing pieces of circumstantial evidence.
Taking the facts together in the light most favorable to the prosecution, there is reason to speculate that Davis acted as a lookout for Washington’s crime; however, sheer “speculation” does not constitute “sufficient evidence” under Jackson. Brown, 441 F.3d at 352. This is especially so in view of precedent regarding innocent acts which are insufficient to support a conviction for aiding and abetting. Thus, no rational trier of fact could infer beyond a reasonable doubt that Davis performed an act or provided encouragement before or during the commission of the carjacking — a necessary element of the charge of aiding and abetting. This case, therefore, is not one in which the state court’s decision is “at least minimally consistent with the facts and circumstances of the case,” Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir.1997), nor is it “one of several equally plausible outcomes,” Hall v. Washington, 106 F.3d 742, 749 (7th Cir.1997). Rather, it is “so inadequately supported by the record ... as to be unreasonable.” Maynard v. Boone, 468 F.3d 665, 671 (10th Cir.2006) (quoting Badelle v. Correll, 452 F.3d 648, 655 (7th Cir.2006)).
I believe that the inferences in this case are insufficient to permit any rational juror from finding that Davis acted as a lookout. Were there at least some evidence that Davis did something particular to the role of a lookout, then it would be appropriate to deny relief. Because such evidence is not present in this case, I respectfully dissent.

. In order to be clearly established law, the law relied on by the habeas petitioner must be law that was clearly established at the time the state court decision became final, not afterward. Williams v. Taylor, 529 U.S. 362, 380, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Moreover, the law must be that "determined by the Supreme Court.” Id. at 381-82, 120 S.Ct. 1495. As we have observed,
Although only Supreme Court case law is relevant under the AEDPA in examining what Federal law is "clearly established,” the decisions of the United States Courts of Appeals may be informative to the extent we have already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court.
Hill v. Hofbauer, 337 F.3d 706, 716 (6th Cir.2003).