RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0081p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

UNITED STATES OF AMERICA,
　　　　　　　　*Plaintiff-Appellee,*

　　　　　　　　　　　　　　　　No. 08-3196

　　　　*v.*

HAYWOOD ALGEE,
　　　　　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 07-00384—Donald C. Nugent, District Judge.

Argued: March 2, 2010

Decided and Filed: March 24, 2010

Before: MARTIN, ROGERS, and McKEAGUE, Circuit Judges.

—————————————

## COUNSEL

**ARGUED:** Jeffrey B. Lazarus, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Robert F. Corts, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jeffrey B. Lazarus, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, Debra K. Migdal, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Akron, Ohio, for Appellant. Robert F. Corts, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

—————————————

## OPINION

—————————————

　　　　BOYCE F. MARTIN, JR., Circuit Judge. Haywood Algee worked at the post office in Twinsburg, Ohio. He was solely responsible for tending the stamp vending machines. After the local Postmaster noticed irregularities with the amount of money and stamps in the machines, the Inspector General's Office set up a "sting" operation to determine whether Algee was responsible for the irregularities. After executing the sting, the government

charged Algee with one count of theft of postal property, one count of misappropriation of postal funds, one count of making false oral statements, and one count of making a false written statement.  The case went to trial, and the jury acquitted Algee on the theft and misappropriation of postal property counts but convicted him on the false statements counts.  He was sentenced to three years of probation, with thirty days of home confinement.

Algee's appeal raises four issues going to the validity of his conviction:  (1) whether there was sufficient evidence to convict him of the false statement allegations; (2) whether the court's refusal to include a specific unanimity instruction was prejudicial error; (3) whether the district court failed to rule on proposed jury instructions prior to closing arguments as required by Federal Rule of Criminal Procedure 30(b) and, if so, whether the error was prejudicial to Algee's ability to give a proper closing argument; and (4) whether the district court properly allowed testimony from government witnesses that the sting, which was called an "integrity test," was specifically targeted at Algee.  For the reasons set forth below, we reject Algee's arguments regarding the sufficiency of evidence, the district court's admission of evidence regarding the circumstances of the "integrity test," and the lack of a specific unanimity instruction.  As for the alleged Rule 30(b) violation, we agree with Algee that the district court violated the Rule when it provided a copy of the jury instructions to defense counsel mere seconds before the prosecution began its closing argument, without any meaningful discussion of the instructions or opportunity for counsel to review the instructions.  However, because the Rule 30(b) error did not prevent Algee from arguing any material aspect of his theory of defense at closing argument, Algee did not suffer prejudice sufficient to mandate a retrial.  We therefore **AFFIRM** the district court's judgment and convictions.

## I.

Algee was a "flex-time" employee at the post office who worked odd hours, a sort of jack-of-all-trades.  One of his duties was keeping the stamp vending machines stocked with stamps and currency and collecting the currency.  He had access to a safe in the back of the office where he kept extra stamps and petty cash.  Algee was the only employee responsible for the vending machines, and he was the only person with access to the machines and the safe, aside from the Postmaster.  The Postmaster had noticed some

discrepancies in the accounting of the vending machines, both shortages and overages. He, therefore, informed the Inspector General's Office, which began an investigation.

The Inspector General decided to conduct an "integrity test," which is essentially a controlled situation that allows for surveillance and investigation. The Inspector General staged a burglary of one of the vending machines, making it appear to have been vandalized, early in the morning of December 18, 2006. Postal agents emptied the machine of all stamps and currency and then put exactly $186.00 in marked currency and $370.20 worth of marked stamps in the machine. They then installed a hidden camera to record the machine and posted agents throughout the office. For reasons not apparent from the record, they did not set up surveillance on the safe or Algee's locker.

When Algee and another employee, Harvey Jacobs, arrived around 2:00 a.m. on the 18th, they noticed that the machine had been vandalized. Algee collected all of the money and stamps from the machine and walked into the back of the office, apparently out of sight of the hidden camera and the agents. Algee and Jacobs called the local police and Officer Miktarian arrived. Unbeknownst to Algee and Jacobs, the local police had been informed of the "integrity test" earlier in the evening. In the process of taking a report of the apparent burglary, Miktarian inquired about the money and stamps still in the machine after the vandalism. Algee stated that he had taken all of the currency and stamps from the machine and placed it in a white cloth bag in the safe. He went back to the safe and returned with the white bag. Miktarian told Algee to give the money to Algee's supervisor and then left.

A couple of hours later, Algee's surpervisor, Brenda Ellenberger, arrived. She asked both Algee and Jacobs to give written statements about what had occurred. Algee's statement indicated that he had retrieved $76.00 in currency and $120.60 worth of stamps from the machine.

Next, around 5:00 a.m., Office of the Inspector General Agents Balfour and Catanzarito (the "IG Agents") arrived. The IG Agents collected the written statements from Ellenberger and then interviewed Jacobs and Algee. They asked Algee for an accounting of the money and stamps that he took from the machine. He stated that he had placed all the money and stamps into a white cloth bag and placed the bag in the safe. They retrieved the bag and counted the money and stamps in Algee's presence. They counted $76.00 in cash

and $120.60 worth of stamps. Included in the cash was an unmarked $20 bill that had not been placed in the machine by the agents. The agents repeatedly asked Algee if the contents of the bag were all that he had retrieved from the safe, and he repeatedly answered in the affirmative. They then got a written statement from Algee, in which he stated that the total paper currency that he had found was $76.00.

Next, Agent Springer, the lead agent from the Inspector General's Office, arrived. Based on the statements made to the IG Agents and the fact that only $76.00 had been found in the bag, Agent Springer had contacted the United States Attorney's Office and decided to arrest Algee. Immediately upon arrival at the post office, Springer arrested Algee, read him his *Miranda* rights, and informed Algee that the vandalism was part of an integrity test and that they knew the machine had contained more than $76.00. Algee replied by saying something along the lines of "well, then everything must be in my safe somewhere . . . I must have gotten things mixed up, and they must be in my safe." Agents searched Algee's car and locker but did not find the money. Agent Springer then conducted a video-taped search of the safe, at which time he found the rest of the marked bills and stamps. Agent Springer testified that the way the money and stamps were placed in the safe indicated a conscious separation and then commingling of the marked items with other items in the safe. For instance, some of the marked bills were found interspersed in a bundle of unmarked bills that were rubber-banded together.

Algee was charged with one count of theft of postal property in excess of $100.00 in violation of 18 U.S.C. § 1707, one count of misappropriation of postal funds in violation of 18 U.S.C. § 1711, one count of making a false statement regarding the amount of money found in the vending machine in violation of 18 U.S.C. § 1001(a)(2), and one count of making a false written statement about the amount of money in the machine in violation of 18 U.S.C. § 1001(a)(3). With regard to the false statement counts, the only specific information alleged in the indictment is the date of the statement and the general substance of the statement; there are no specific allegations regarding to whom the statement was made or the exact wording of the statement. The same holds true for the verdict form, which merely points back to the allegations in the indictment.

Prior to trial, Algee moved in limine under Evidence Rules 403 and 404(b) to exclude evidence related to the "integrity test" and the fact that Algee was specifically under investigation. Algee did not want the jury to hear that it was a sting operation directed at him for fear that the jury would assume that "where there's smoke, there's fire." The government contended that, to prevent juror confusion, it needed to be able to provide the jury context about why there were only marked bills in the machine and why there was video surveillance. The district court allowed the government to address the background in general terms by having its witnesses testify that they were investigating discrepancies in the money and inventory in the vending machine. However, when cross-examining the Twinsburg Postmaster, defense counsel asked whether there had been overages as well as shortages of cash in the machine, to which the Postmaster responded in the affirmative. The government contended that this line of questioning by defense counsel opened the door for the government to go into more specifics about the nature of the investigation, the frequency of shortages as compared to the infrequency of overages, and Algee's being specifically targeted in the investigation and integrity test. The court agreed and admitted all of this information into evidence.

Also prior to trial, Algee submitted proposed jury instructions. One of his proposed jury instructions was a specific unanimity instruction, as follows:

> Counts Three and Four of the indictment, allege a number of false or fraudulent statements or writings were made by defendant.
>
> The government is not required to prove that all of the purported false statements alleged in Counts Three and Four of the indictment are, in fact, false.
>
> However, each of you must agree on which statement, and/or which writing, if any, the government proved was false or fraudulent beyond a reasonable doubt. In other words, your decision as to the false statement proven must be unanimous. Unless the government has proven the same false or fraudulent statement to each of you, beyond a reasonable doubt, you must acquit the defendant of the charges in Count Three and/or Count Four of the indictment.

(Def.'s Prop. Instr. No. 28.)

Trial commenced and, immediately after the defense rested, the court moved into closing statements. At that point, the court had not conducted a charging conference

regarding jury instructions and had not provided the attorneys with a copy of the jury instructions that the court intended to use.  Algee's attorney asked for a side-bar, and the following transpired:

> MS. MIGDAL:  Your Honor, I have a motion that I would like to make at side bar.
> THE COURT:  Rule 29 motion?
> MS. MIGDAL:  Yes, but also there's another matter if I could address it quickly.
> THE COURT:  We'll do it after the arguments.  Let's not waste any more time.
> MS. MIGDAL:  It's with regard to the instructions.
> THE COURT:  I haven't instructed yet.
> MS. MIGDAL:  With regard to providing counsel with the instructions.
> THE COURT:  Here.  There you go.
> MS. MIGDAL:  Actually, Your Honor --
> THE COURT:  Come over here.  There you go (handing.)  Go ahead. Proceed.
> MS. MIGDAL:  Your Honor, may we --
> THE COURT:  Later.
> MR. CORTS:  Thank you, Your Honor.

(Trial Tr., Vol III, 545:21-546:14.)

The government began closing arguments immediately thereafter.  After closing arguments, but before the court read the instructions to the jury, there was another exchange regarding the jury instructions, specifically the proposed unanimity instruction:

> MS. MIGDAL:  I would ask the Court -- I don't see a unanimity instruction with regard to Count 24, and – I'm sorry, Counts 3 and 4. Counts 3 and 4, the false statement counts, oral and written, both refer to more than one oral or written statement, and so the concern is that without the unanimity instruction that we propose on page 28 of our instruction, that there could be a less than unanimous jury if they don't agree, if they don't all agree on the same statement.
> I believe that's it, Your Honor.
> THE COURT: Okay.  I think the instruction sets forth the correct statement of law, and I will allow you to raise that issue again at the conclusion, and we'll see.  Show time.

(Trial Tr., Vol. III, 600:24-601:12.)   The court then brought the jury in and read the instructions.  The instructions did not include a specific unanimity instruction.  Defense counsel renewed her objection to the lack of a unanimity instruction after the court had

finished instructing the jury, to which the court responded "okay" and nothing more. (Trial Tr., Vol. III, 632:2-4.)

The jury returned a verdict of not guilty on the theft charges and guilty on the false statement charges. Algee moved for judgment of acquittal under Rule 29, which was denied. The court sentenced Algee to three years' probation, with one month of home confinement. Algee timely appealed.

## II.

### A.    SUFFICIENCY OF THE EVIDENCE

The elements of a false statement conviction under 18 U.S.C. § 1001 are: (1) the defendant made a statement; (2) the statement was false; (3) the defendant knew the statement was false; (4) such statement was relevant to the function of a federal department or agency; and (5) the false statement was material. *United States v. Brown*, 151 F.3d 476, 484 (6th Cir. 1998). Algee argues that there was insufficient evidence to prove the third element, that he knew his statements to be false when he stated that he only retrieved $76.00 from the machine and that all the money from the machine was in the white bag. His primary argument at trial in defense of the false statement charges was that he was confused and rushed when he collected the money and put it in the safe, believing that there had just been a burglary, and must have forgotten that he had just thrown some of the money in the safe while putting other money in the bag.

We review de novo the district court's denial of a motion for a judgment of acquittal, and must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)).

In this case, there was ample circumstantial evidence from which the jury could infer that Algee knew that he had taken more money from the machine than what he indicated in

his oral and written statements. His story, first told less than an hour after the incident and steadfastly maintained until confronted with its actual falsity, was that he put all of the money into the white bag immediately. However, the money in the white bag was significantly less than what was in the machine and included one $20 bill that was not even in the machine. Further, the search of the safe revealed that the marked bills were interspersed with other money in a manner that suggests intentional mixing. Thus, it would not have been unreasonable for the jury to infer that Algee knew he had only put some of the cash in the bag. In light of this reasonable inference, the jury's verdict must be sustained.

**B.    EVIDENTIARY RULING**

Algee moved in limine to exclude any testimony about the fact of or the purpose of the "integrity test." From the transcript of the brief oral argument on the matter (Trial Tr., Vol. I, 103:7-109:3), it is clear that his main concern with this information was its relation to the theft counts. The theft counts arguably had weak jury appeal because the rest of the money was in the post office's safe, not in Algee's locker or car or pocket. So, Algee feared that the government would try to buttress the theft counts by implying to the jury that Algee, the only person with access to a vending machine that had indisputably experienced cash shortages in the past, had actually succeeded in stealing cash in the past, thus prompting the integrity test aimed at Algee. The government countered that it needed to explain to the jury why there was a known quantity of marked bills in a vending machine and a camera secretly recording the machine.

At the end of the discussion on the motion in limine, the court ruled that the government could generally indicate that there had been discrepancies with the vending machine. Algee was willing to agree to discussion of discrepancies at the post office, but he objected to specific reference to the vending machine as it would be known by the jury that Algee was the only person with access to the machine. He therefore objected to the ruling before the jury was brought in.

When the Postmaster testified, the government trod relatively lightly around the circumstances of the investigation. On cross-examination, however, Algee's attorney asked about whether there had been overages as well as shortages in the machines. The government took this line of questioning to have opened the door to delve into more

specifics about the investigation, which the court later agreed was the case. (Trial Tr., Vol. II, 220:15-20.)  The government then elicited the fact that the investigation was aimed specifically at Algee because he was the only one with access to the vending machines.

We review the court's decision to allow the evidence for abuse of discretion.  *United States v. Copeland*, 321 F.3d 582, 595-96 (6th Cir. 2003).  Algee contends that this evidence was impermissible "prior bad acts" evidence under Rule 404(b).  The government contends that the evidence was not offered as proof of Algee's prior bad acts, but rather was *res gestae* evidence offered to give context to what transpired.

Regardless of how it is characterized, however, the evidence was properly admitted. Even Algee agrees that the jury was entitled to know why the government had placed an exact amount of marked bills and stamps into the machine, which was the predicate for both the theft and false statement charges.  If there had been no context as to why the investigators were there with marked currency and undercover surveillance, the jury would likely have been confused.  Thus, there was no problem with allowing witnesses to discuss discrepancies with the accounting of the vending machines in general terms.

It is less clear that defense counsel's questioning about the existence of overages as well as shortages opened the door to allow the government to elicit the fact that Algee was specifically the target of the investigation.  One does not seem necessarily to flow from the other.  However, it is irrelevant because, by that point, all of the information was already properly in front of the jury.  The jurors properly were aware of the cause of the investigation, and they properly knew that Algee was the only person with access to the vending machine.  Thus, the jury necessarily knew that the investigation was aimed at a machine for which only Algee was responsible.  That the government took the next step and explicitly informed the jury of this fact was not unduly prejudicial in light of what the jurors had already heard.  Accordingly, the court's admission of this evidence was not an abuse of discretion.

## C.     SPECIFIC UNANIMITY INSTRUCTION

As described above, Algee made substantially the same false statement—that all the money from the vending machine was in the white bag—to several people.  He made the

statement to the police officer, his supervisor, the two IG Agents, and Agent Springer. Similarly, he made substantially the same written statement to his supervisor and to the IG Agents. But, neither the indictment nor the verdict form specified which exact statement was being charged. Therefore, Algee requested that the court include a specific unanimity instruction in its charge to the jury, directing that the jury had to agree unanimously as to which statement Algee knew to be false. As the district court noted, Algee's proposed jury instruction was a correct statement of the law—the jury had to be unanimous as to which statement to which person they were convicting Algee. Thus, the question is whether it was reversible error for the court not to give the instruction.

"A refusal to give requested instructions is reversible error only if (1) the instructions are correct statements of the law; (2) the instructions are not substantially covered by other delivered charges; and [(3)] the failure to give the instruction impairs the defendant's theory of the case." *United States v. Hargrove*, 416 F.3d 486, 489 (6th Cir. 2005). This Court has previously stated that "a jury instruction addressing specific or augmented unanimity is necessary if '1) a count is extremely complex, 2) there is a variance between the indictment and the proof at trial, or 3) there is a tangible risk of jury confusion.'" *United States v. Krimsky*, 230 F.3d 855, 860 (6th Cir. 2000) (quoting *United States v. Thomas*, 74 F.3d 701, 712 (6th Cir. 1996)). Moreover, "a single count that presents more than one potential basis for conviction does not automatically require a unanimity instruction. . . . Rather, we have consistently recognized that the need arises when it is shown that there is a genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts." *Id.* (internal citations and quotations omitted).

In this case, the first and second bases for a specific unanimity instruction are not present—the false statement counts are not extremely complex and there is no variance between the indictment and the proof. Thus, it comes down to whether there is a tangible risk of jury confusion. Algee primarily argues that one juror could have focused on the statement to the IG Agents and the next juror could have focused on the statement to Agent Springer, and similarly for the written statements. This argument is unpersuasive. All of the statements were materially identical, giving rise to the prototypical situation of a single count presenting "more than one potential basis for conviction." *Id.* If the jury believed that Algee knowingly made a false statement to the IG Agents, the jury necessarily believed that Algee

knew it to be false when he made the same statement to Agent Springer. It was never Algee's theory at trial that he made the statement to one person but not to another person. Instead, his defense was that he never knew any of the statements to be false. Thus, if the jury rejected this defense theory as to one statement, it necessarily rejected the theory for all of the statements. As the record does not support a finding of potential for juror confusion, it was not error for the district court to refuse to give the specific unanimity instruction.

**D.      FEDERAL RULE OF CRIMINAL PROCEDURE 30(b)**

### 1.      Was there a violation?

Federal Rule of Criminal Procedure 30(b) states: "The court *must* inform the parties *before closing arguments* how it intends to rule on the requested instructions." FED. R. CRIM. P. 30(b) (emphasis added). "The rule is grounded in 'basic concepts of fairness,' allowing 'counsel to conform their arguments to the law as it will thereafter be presented by the judge to the jury.'" *United States v. Rommy*, 506 F.3d 108, 125 (2d Cir. 2007) (quoting *United States v. James*, 239 F.3d 120, 124 (2d Cir. 2000)).

In this case, the district court clearly violated Rule 30(b) when it "ruled" on jury instructions by providing defense counsel a copy of the jury instructions just seconds before closing arguments began, without having had any discussion about the contents of the instructions. The purpose of the Rule is to allow counsel a meaningful opportunity to tailor their closing arguments to the court's pronouncement of the law governing the case. A few seconds is not a meaningful opportunity. Furthermore, the court's actions placed defense counsel in the untenable position of either paying attention to the government's closing argument or familiarizing herself with the law of the case, as she could not reasonably be expected to do both.

### 2.      Was the violation prejudicial?

Once it has been determined that the district court violated Rule 30(b), the question becomes whether the error was prejudicial. We have not had the opportunity to discuss in any detail what kind or quantum of prejudice flowing from a Rule 30(b) violation is sufficient to prompt remand for a new trial. However, circuits that have addressed this issue appear unanimous in holding that the general question is whether the court's failure to rule

on requested jury instructions prejudiced or inhibited counsel's ability to argue her theory of the case. *E.g. Rommy*, 506 F.3d at 125 ("Reversal on the basis of a Rule 30 violation is warranted, however, only where the defendant can show that he was substantially misled in formulating his [closing] arguments or otherwise prejudiced.") (internal citations and quotations omitted); *United States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993) ("'Failure to comply with Rule 30 is reversible error, however, only if counsel's closing argument was prejudicially affected thereby.'") (quoting *United States v. Gaskins*, 849 F.2d 454, 458 (9th Cir. 1988)). "A party suffers prejudice if it 'was unfairly prevented from arguing his or her defense to the jury or was substantially misled in formulating and presenting arguments.'" *Foppe*, 993 F.2d at 1451 (quoting *Gaskins*, 849 F.2d at 458).

In this case, the question of whether the Rule 30(b) error was prejudicial to the ability of Algee's counsel to give her closing argument is tied, at least in part, to the issue of the specific unanimity instruction. The rest of the jury instructions, especially with regard to the false statement counts, were relatively boilerplate. Moreover, comparing the government's proposed instructions with the defense's proposed instructions, there are no material differences, save the presence of a specific unanimity instruction. Thus, Algee's counsel should have known that there was no real disagreement about the law and should have thus prepared her remarks accordingly except, of course, for the issue of specific unanimity.[1]

The government contends that, because a specific unanimity instruction was not required as a matter of law, the court's failure to rule on the instruction before closing was not prejudicial because the instruction would not have been included anyway. But this is not necessarily true. Even though the court did not include the instruction, and even though we have now found that a specific unanimity instruction was not required as a matter of law, the instruction was still a correct statement of the law. The district

---

[1] Aside from the actual content of the jury instructions, we cannot overlook the fact that the court placed Algee's attorney in the position of either paying attention to the government's closing argument or reviewing the instructions to make sure they actually said what counsel had expected. This alone could form the predicate for prejudice sufficient to warrant retrial. For instance, if there was indication in the record that counsel did, in fact, miss something important in the government's closing argument because she was reviewing the instructions, that would likely be sufficient to warrant reversal. However, because there is no indication in this record that Algee's attorney was unable to listen to the government's closing, there is no prejudice in that regard.

court explicitly said it was a correct statement of the law, but did not do so until *after* defense counsel had given her closing argument. Thus, because it was a correct statement of the law, defense counsel could have argued the point in her closing even if the jury was not specifically instructed on specific unanimity by the court.

However, the packet of instructions handed to defense counsel immediately prior to the beginning of closing arguments did not include the requested instruction. An attorney in this situation would be reasonable in assuming that the court did not believe the requested instruction to be a correct statement of the law. We cannot fault counsel for erring on the side of caution by not arguing specific unanimity in light of the risk of the court sustaining an objection from the government. Had the court conferred with counsel in a meaningful manner *prior* to closing arguments, we assume that the court would have said something similar to what it said *after* closing arguments—that even though the specific unanimity instruction was a correct statement of the law, the court did not feel the need to include it in the jury instructions. And had counsel heard this before her closing argument, she could comfortably have argued the need for specific unanimity to the jury.

Furthermore, it seems clear, given her repeated insistence on a specific unanimity instruction throughout the trial, that defense counsel would have mentioned to the jury the need for specific unanimity if she felt that she could. So, in one sense, Algee was prejudiced because his counsel was not able to deliver the exact closing argument that Algee might have wished to give. However, as stated above, specific unanimity was not a material aspect of Algee's defense. Algee never took the position that he made the statement to one person but not to another person. Instead, Algee's defense was that he did not intend to steal the money and that all of the statements were made without knowledge of their falsity.

Given the extraordinarily minor role of specific unanimity in Algee's overall defense theory, his inability to argue the issue to the jury did not prejudice him sufficiently to warrant a retrial. Jury trials are fluid by nature. The law recognizes this reality and allows for some play in the joints when it comes to reviewing the conduct of

a trial to ensure its fundamental fairness.  That general approach is also appropriate here. In the case of a Rule 30(b) violation, the question is whether the error prevented the defendant from arguing a material aspect (not just *the* material aspect, for a defendant is allowed to present multiple material arguments in his defense) of his defense theory to the jury.  If it were the case that specific unanimity was a material aspect of Algee's theory of defense, regardless of its obvious weakness, his inability to argue the issue at closing, based on a Rule 30(b) violation, would have prejudiced him severely by leaving him essentially speechless before the jury.  But that is not the case here.  The record plainly shows that specific unanimity was not material to Algee's defense theory.  Algee had a full opportunity to argue all material aspects of his defense theory to the jury. Accordingly, the district court's Rule 30(b) violation did not result in prejudice to Algee sufficient to warrant retrial.

## III.

For the reasons set forth above, we **AFFIRM** Algee's convictions.