*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0183p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TONY DAVIS,

               *Petitioner-Appellant,*

    *v.*

BLAINE LAFLER, Warden,

                 *Respondent-Appellee.*

No. 08-1291

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-13659—Gerald E. Rosen, Chief District Judge.

Argued: April 29, 2010

Decided and Filed: June 25, 2010

Before: MOORE and GILMAN, Circuit Judges; RUSSELL, Chief District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Micah S. Myers, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Appellant. Laura A. Cook, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Micah S. Myers, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Appellant. Laura A. Cook, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

      RUSSELL, Chief D. J., delivered the opinion of the court, in which MOORE, J., joined. GILMAN, J. (pp. 15-22), delivered a separate dissenting opinion.

---

[*] The Honorable Thomas B. Russell, Chief United States District Judge for the Western District of Kentucky, sitting by designation.

———————————

**OPINION**

———————————

THOMAS B. RUSSELL, Chief District Judge.  Petitioner-Appellant, Tony Davis, appeals the judgment of the District Court denying his petition for writ of habeas corpus.  Following a jury trial, a Michigan state court convicted Davis of carjacking and receiving and concealing stolen property over a value of $20,000.00.  The Michigan Court of Appeals denied Davis's application for leave to appeal for lack of merit, following which the Michigan Supreme Court also denied Davis's application for leave to appeal. Upon Davis's filing a petition for habeas relief, the district court concluded that the state court correctly applied clearly established federal law in finding the evidence presented was sufficient to find guilt beyond a reasonable doubt and the performance of trial counsel in refusing to call an exculpatory witness was not constitutionally deficient.  For the reasons set forth below, we **REVERSE** the decision of the district court and **REMAND** the case to the district court with instructions to grant a conditional writ of habeas corpus, giving the State of Michigan 120 days within which to provide Davis a new trial or, failing that, to release him.

## I. BACKGROUND

On December 11, 2002, Petitioner-Appellant, Tony Davis, was convicted by a jury in the Wayne Circuit Court of carjacking and receiving and concealing stolen property over a value of $20,000.00 pursuant to Michigan statutes.  He was sentenced on January 8, 2003, to a prison term of 13 to 20 years for the carjacking conviction and received a concurrent term of 23 months to 10 years pursuant to the conviction for receiving and concealing stolen property.  The district court summarized the relevant facts of this case as follows:

> Petitioner's convictions arise out of a carjacking that occurred in
> the parking lot of a restaurant in Detroit, Michigan.
>
> Clarence Franklin testified that, on March 27, 2002, at
> approximately 10:00 p.m., he stopped at the China One Restaurant, along

with his fiancee Yvonne Depriest and 12-year-old daughter, Brittany Johnson. Franklin parked his Lincoln Navigator. He and his daughter went into the restaurant to get food and Depriest remained in the vehicle. After waiting for approximately ten minutes, Franklin got his food and left the restaurant. As he was leaving, he saw Petitioner enter the restaurant.

Franklin testified that Brittany sat in the backseat of the vehicle and he got into the driver's seat. As he closed his door, Marco Washington approached the vehicle and ordered Franklin to the exit the vehicle. Washington pointed a .9-mm weapon at Franklin and again ordered him out of the vehicle. Franklin, Brittany and Depriest exited the vehicle. Washington drove the vehicle to the front of the restaurant. Petitioner exited the restaurant and got into the passenger seat of the Navigator. The Navigator was then driven from the parking lot.

Franklin's vehicle was located approximately two hours later. Franklin later identified Washington as the man with the gun and Petitioner as the person he saw inside the restaurant.

Yvonne Depriest testified that she waited in the Navigator while Franklin and Brittany went into the restaurant. She observed a gray Chevrolet Cavalier enter the parking lot. She saw someone exit the vehicle and enter the restaurant. When Franklin and Brittany returned to the car, Depriest heard someone cock a gun and demand that they exit the vehicle. They all exited the car. She testified that Petitioner then exited the restaurant and got into the passenger side of the vehicle.

Brittany Johnson testified that, as she and her father were waiting for their food, Petitioner entered the restaurant and asked for a glass of water. She identified Washington as the man who forced them out of their vehicle at gunpoint, and identified Petitioner as the man who entered the vehicle before it drove way.

Police Officer Scott Konczal of the Detroit Police Department testified . . . he and his partner responded to a call that someone had observed men stripping a Navigator on Novara Street in Detroit. Officer Konczal testified that he and his partner approached a garage located behind a vacant home. A man who the officers believed to be a lookout yelled something into the garage and fled. . . . Officer Konczal saw a second person run from the garage. He gave chase and apprehended Marco Washington. Officer Konczal's partner arrested Petitioner inside the garage. The key to the Navigator was found in Washington's pocket.

Washington pled guilty in connection with the carjacking of Franklin. Davis was initially charged with armed robbery and carjacking, to which he pled not guilty and was

appointed counsel, Robert Slameka.  The State of Michigan tried Davis for the carjacking under an aiding and abetting theory.

The Information was amended after the close of evidence to include a count of receiving and concealing stolen property valued over $20,000.00.  The jury returned a verdict finding Davis not guilty of armed robbery but convicting him of carjacking and receiving and concealing stolen property valued over $20,000.00.

Davis was appointed new counsel following his conviction.  Davis moved the trial court for dismissal on two grounds: (1) the evidence presented at trial was insufficient to support a conviction for aiding and abetting a carjacking and (2) Slameka had been constitutionally ineffective due to his inadequate preparation and consultation with Davis prior to trial and due to his refusal to call Washington as a witness.

The state trial court denied Davis's motion for dismissal. Taking the evidence in a light most favorable to the prosecution, the court concluded the evidence was sufficient to find Davis aided and abetted the carjacking.  The court found the evidence showed Davis "arrived in the same car with the perpetrator, went into the restaurant and only ordered a cup of water while another man took the car at gunpoint," then "immediately got into the stolen vehicle and two and half hours later was found dismantling it."  From this, the court concluded it was a "reasonable inference" that Davis "preplanned his role in the carjacking thereby satisfying the intent element of aiding and abetting a carjacking."  The court also rejected Davis's claim of ineffective assistance of counsel, concluding that Davis "has not shown that the failure to call the perpetrator who pled guilty to the carjacking was prejudicial to the extent that but for that deficiency, [Davis] would have had a more positive outcome at trial."

Davis moved the Court of Appeals for the State of Michigan for leave to appeal on the same grounds after the trial court's denial of his motion for dismissal.  Davis's request to appeal was denied as unmeritorious in a one-sentence order with no supporting reasoning.  On the same grounds, Davis sought leave to appeal to the Michigan Supreme Court.  This request was also denied in a one-sentence order without supporting reasoning.

Davis then filed a habeas petition under 28 U.S.C. § 2254 challenging his conviction on the same grounds raised before the state court: insufficiency of evidence and ineffective assistance of counsel. On January 31, 2008, the district court issued an opinion and order denying the petition. Davis now appeals this denial.

## II. ANALYSIS

### A. Standard of review

We review the legal conclusions of a district court in federal habeas corpus proceedings de novo, whereas the factual findings of the court will be set aside only if clearly erroneous. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). The findings of fact by a district court are reviewed de novo, however, if they are based only upon review of the state court transcript. *Dando v. Yukins*, 461 F.3d 791, 796 (6th Cir. 2006).

Review of state court determinations is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2254(d). AEDPA provides that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

State court application of federal law is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S.

362, 413 (2000) (O'Connor, J., concurring); *Brown v. Palmer*, 441 F.3d 347, 350 (6th Cir. 2006). The state court's application of federal law is unreasonable where "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The state court's decision must have been objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Williams*, 529 U.S. at 409 ("Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."). An unreasonable application of federal law is distinct from an incorrect application of federal law. *Williams*, 529 U.S. at 410; *see also Macias v. Makowski*, 291 F.3d 447, 454 (6th Cir. 2002) ("[T]he relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law."). Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

The factual findings of the state court are presumed correct, but may be rebutted. 28 U.S.C. § 2254(e)(1). The applicant, or petitioner, bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.*; *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003) ("Under AEDPA, primary or historical facts found by state courts are presumed correct and are rebuttable only by clear and convincing evidence." (internal quotation marks omitted)).

**B. Sufficiency of the Evidence to Support Conviction for Aiding and Abetting Carjacking**

Following the standard set forth in AEDPA, we must first determine whether the Michigan trial court's denial of Davis's claim of insufficient evidence was contrary to, or an unreasonable application of, clearly established federal law. We agree with the district court that the state court incorporated the proper federal standard; therefore, it was not contrary to clearly established law. The question remains whether the state court's determination that there was sufficient evidence for a rational trier of fact to infer

intent was an unreasonable application of that federal standard. We conclude the state court's determination was an unreasonable application of the federal standard.

The applicable clearly established federal standard is set out by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 309 (1979). In *Jackson*, the Supreme Court stated: "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt" of each element of the offense. *Jackson,* 443 U.S. at 309; *see also In re Winship*, 397 U.S. 358, 364 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). This "doctrine requires more than simply a trial ritual," it requires "that the factfinder will rationally apply the standard to the facts in evidence." *Jackson,* 443 U.S. at 316-17. However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Id.* at 317. "[W]hen such a conviction occurs in a state trial, it cannot constitutionally stand." *Id.* at 318. The court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

The State, in order to support a conviction for aiding and abetting a crime under Michigan law, must prove beyond a reasonable doubt that

> (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended it when the defendant gave aid or encouragement.

*Brown*, 441 F.3d at 351 (citing *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999)). "Aiding and abetting" consists of all forms of assistance rendered to the perpetrator of a crime, including all words or deeds that might support, encourage, or incite the commission of a crime. *Carines*, 597 N.W.2d at 135. "Although intent is a required

element for the aiding-and-abetting offense, intent may be inferred from circumstantial evidence." *Brown*, 441 F.3d at 351 (citing *People v. Wilson*, 493 N.W.2d 471, 476 (Mich. Ct. App. 1992)); *Carines*, 597 N.W.2d at 135 (holding intent may be inferred from all facts and circumstances). Several factors may be considered in determining intent, including "a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Carines*, 597 N.W.2d at 135.

However, "[m]ere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to show that a person is an aider and abettor." *People v. Wilson*, 493 N.W.2d 471, 476 (Mich. Ct. App. 1992); *Brown*, 441 F.3d at 351. The Michigan Supreme Court has also held that mere mental approval, passive acquiescence or consent are similarly insufficient to find a person an aider and abettor. *Fuller v. Anderson*, 662 F.2d 420, 424 (6th Cir. 1981) (quoting *People v. Burrel*, 235 N.W. 170 (Mich. 1931)). "In other words, the accused must take some conscious action designed to make the criminal venture succeed in order to be guilty of aiding and abetting." *Fuller*, 662 F.2d at 424. Finally, under Michigan law, "[a] person cannot be convicted as an aider and abettor on the basis that he was an accessory after the fact." *Hopson v. Foltz*, No. 86-1155, 1987 WL 37432, at *2 (6th Cir. May 20, 1987) (citing *People v. Lucas*, 262 N.W.2d 662, 662-63 (Mich. 1978)). Aiding and abetting of the crime must occur before or during the commission of the crime. *See People v. Smith*, Nos. 204474, 204476, 1999 WL 33453995, at *8 (Mich. Ct. App. March 12, 1999).

On appeal, Davis argues the evidence presented was insufficient to establish that he aided and abetted the carjacking. The following facts were introduced at trial: (1) Davis arrived at the scene of the crime with Washington and a third person in a Chevrolet Cavalier; (2) Davis entered the restaurant while two of the victims were inside; (3) Washington stayed outside the restaurant and the third person stayed in the Cavalier; (4) Davis ordered a cup of water and stood at a window inside the restaurant; (5) after the two victims exited the restaurant and entered their car, Washington ordered

all three of the victims out of their car at gunpoint; (6) Washington drove the stolen car a very short distance toward the restaurant where Davis entered the car; (7) Washington then drove away from the scene with Davis in the car; (8) the third person who was in the Cavalier drove off after them; (9) Davis, Washington and another man were caught stripping the car in a garage roughly two-and-a-half hours later; and (10) the Cavalier that was seen trailing Washington and Davis from the restaurant was found near the garage.

Davis argues these facts permit only speculation that he played any role in the crime and only speculation that he had the requisite criminal intent. Davis concludes that "[t]hese facts established, at most, acquiescence and after-the-fact assistance, neither of which suffices for a conviction."

The State argues the evidence presented at trial was "clearly sufficient to allow any rational trier of fact to conclude Davis aided and abetted in the commission of the carjacking offense." The State's theory is that Davis acted as a lookout for the carjacking. The State also argues that although Davis may be able to present a reasonable alternative to the finding that he was aiding and abetting, the federal court may not substitute its view of the facts for that of the state court.

This Court has addressed this situation in a similar case: *Brown v. Palmer*, 441 F.3d 347 (6th Cir. 2006), which is binding precedent.[1] The *Brown* court, applying Michigan law, held there was insufficient evidence to find the defendant guilty of aiding and abetting carjacking. 441 F.3d at 351-53. The facts presented at trial consisted of the following:

---

[1]In order to be clearly established law, the law relied on by the petitioner must be law that was clearly established at the time the state court decision became final, not afterward. *Williams*, 529 U.S. at 380. Additionally, the Court is also limited to law "as determined by the Supreme Court." *Id.* at 381-82. However,

> Although only Supreme Court case law is relevant under the AEDPA in examining what Federal law is "clearly established," the decisions of the United States Courts of Appeals may be informative to the extent [the court has] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court.

*Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003).

(1) Brown was present before and during the carjacking, (2) he and the perpetrator were in the car together before the perpetrator committed the offenses, (3) he stared at the victims while the perpetrator fired the shots, (4) he never got gas even though he was parked near a gas pump, (5) he attempted to flee as soon as the perpetrator drove off in the car, and (6) he failed to contact the police to retrieve his car.

*Id.* at 351. The *Brown* court concluded that the evidence "clearly demonstrates that Brown was present at the scene and had some acquaintance with the perpetrator . . . however, the evidence pointing to Brown's guilt becomes quite speculative." *Id.* The *Brown* court went on to say, "[a]lthough the facts viewed in the light most favorable to the state may have created 'reasonable speculation' that Brown aided and abetted the carjacking and armed robbery," there were no facts demonstrating Brown in fact provided assistance or encouragement to the perpetrator. *Id.* at 352. Being present at the scene was insufficient to establish that Brown aided and abetted beyond a reasonable doubt. *Id.* Additionally, the *Brown* court reasoned that flight from the scene was similarly insufficient as it is consistent with desire to avoid a confrontation from the victims of the carjacking, distinguishable from the inference of guilt that arises when one flees from law enforcement. *Id.*

The *Brown* court also discussed and found persuasive two other cases from this Court which addressed similar circumstances: *Fuller v. Anderson*, 662 F.2d 420 (6th Cir. 1981), and *Hopson v. Foltz*, No. 86-1155, 1987 WL 37432 (6th Cir. May 20, 1987). In *Fuller*, the petitioner allegedly acted as a lookout while another person committed arson by throwing a Molotov cocktail at the victim's home. 662 F.2d at 421-23. Evidence was presented that petitioner "stood guard," "turned his head from side to side more than twice," and ran away with the perpetrator after the arson. *Id.* However, the *Fuller* court held that while this evidence created reasonable speculation, there was no evidence the petitioner intended to burn the home, and the evidence Fuller acted as a lookout was "insufficient to establish beyond a reasonable doubt that [Fuller] took conscious action to aid [the perpetrator's] commission of arson." *Id.* at 424.

In *Hopson*, the petitioner was tried for aiding and abetting second degree murder in Michigan. 1987 WL 37432, at *1. The following evidence was presented: the

petitioner and victim were seen with two others arguing in a bar where a comment was made to the victim implying threat of serious injury; just prior to the shooting, the petitioner and victim were seen arguing on a street corner; the perpetrator arrived in a car and removed a gun from his trunk; several shots were fired; the petitioner was observed leaving an alley and walking to his house where he appeared to hand something to someone inside. *Id.* The State theorized that the petitioner had taken the shells to the individual in the house. *Id.* The *Hopson* court held that the testimony "indicates at most [the petitioner] was present at the shooting, that he may have argued with the victim during the evening prior to the shooting, that he may have known someone else intended to harm [the victim], and that he may have taken the empty shell casing after the shooting." *Id.* at *2. However, the court found no proof was provided that he acted in concert with the perpetrator or that he did anything to support, encourage or incite the commission of the crime. *Id.* The *Hopson* court concluded that the statements made may have shown animus but could not be construed as encouragement and that Hopson's actions taking the shell casings may have made him an accessory after the fact but could not support a conviction as an aider and abettor. *Id.* at *2. The court held that this evidence was insufficient to establish guilt beyond a reasonable doubt. *Id.*

Applying to the case at hand this precedent of *Brown*, and the *Fuller* and *Hopson* cases that *Brown* approvingly endorsed, we conclude that the evidence presented at trial is not sufficient to support a conviction of guilt beyond a reasonable doubt. First, although the facts establish that Davis was at the scene, the law makes clear that this alone is not enough.

Second, the evidence establishes that Davis entered the restaurant, ordered water, and remained in the restaurant until the crime was over. The State asserts this is circumstantial evidence of Davis's role as a lookout, but there is no evidence of him looking around, which itself was not enough in *Fuller*. Nor is there testimony about Davis's behavior while the carjacking was taking place. Franklin, one of the victims, testified that Davis stood at the window during the crime. However, unlike in *Brown*, there is no evidence he was facing the parking lot and staring or even looking at the

crime. Nor is the testimony clear as to which window Davis was standing near: the large window that forms part of the restaurant's facade or the service window inside the restaurant. Even taking the facts in a light most favorable to the prosecution, and even assuming that Davis was staring at the crime from the large front window of the restaurant, these same facts in *Brown* were held to be insufficient to establish aiding and abetting. Also, the State presented no evidence that Davis took any action to prevent anyone in the restaurant from leaving or seeing the crime taking place, i.e., there was no evidence Davis created a distraction.

Third, there is testimony that Davis entered the stolen vehicle when the perpetrator stopped to allow him to get in and fled the scene. Flight, as in the *Fuller* case, may be less indicative of guilt when the individual is fleeing for other reasons, such as desire to avoid confrontation, rather than fleeing from law enforcement. Here, the victims of the crime were still in the parking lot and may have associated Davis with the crime. This fact does not establish that Davis was encouraging, supporting, or inciting the crime. First, the crime had been committed by the time he entered the vehicle. In order to establish the crime of carjacking the State must establish "(1) that the defendant took a motor vehicle from another person, (2) that the defendant did so in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle, and (3) that the defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear." *People v. Davenport*, 583 N.W.2d 919, 921 (Mich. Ct. App. 1998). At the time Davis entered the stolen vehicle the elements of the crime had been satisfied. Second, although flight in this instance may provide an inference of knowledge of the crime, it does not similarly provide an inference that Davis took a conscious action to aid the commission of the crime.

Finally, the fact that Davis was found stripping the car several hours after the crime provides no indication or inference that Davis encouraged Washington in the commission of the crime in any way. This fact may provide evidence that Davis was an accessory after the fact; however, assisting after the fact is not sufficient to find Davis guilty of aiding and abetting. *See Hopson*, 1987 WL 37432, at *2 (holding that post-

crime conduct does not support finding beyond a reasonable doubt that defendant aided crime).

Furthermore, taking the facts together does not support a finding of guilt beyond a reasonable doubt. These facts provide reason to speculate that Davis acted as a lookout for Washington's crime; however, "reasonable speculation" is distinct from "sufficient evidence" under *Jackson*. *Brown*, 441 F.3d at 352. While there is considerable circumstantial evidence that Davis was aware of the plan to commit the carjacking, no rational trier of fact could infer beyond a reasonable doubt that Davis performed an act or provided encouragement before or during the commission of the crime, a necessary element of the charge of aiding and abetting. Even taken in a light most favorable to the prosecution, the evidence did not establish beyond a reasonable doubt that Davis performed acts or gave encouragement that assisted the crime, especially in view of the precedent of this Court regarding which acts constitute aiding and abetting.

The district court in this case found that the state court incorporated the proper *Jackson* standard and concluded that the "state court's decision that sufficient evidence was presented to sustain [Davis's] conviction did not result in a decision that involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the Untied States." After de novo review, taking the facts in the light most favorable to the State and drawing all reasonable inferences consistent with the verdict, the Court concludes the facts presented in this case simply do not provide sufficient evidence on which to find Davis aided and abetted carjacking beyond a reasonable doubt. Based on the facts relied on by the state court, it was unreasonable to determine that any rational trier of fact could infer beyond a reasonable doubt that Davis performed an act or gave encouragement while the crime was being committed. We conclude the district court erred in finding the state court decision did not involve an unreasonable application of federal law.

As we have found there was insufficient evidence on which to base Davis's conviction for aiding and abetting the carjacking, there are sufficient grounds for grant

of a conditional writ of habeas.  Therefore, we need not address Davis's ineffective assistance of counsel ground for habeas relief.

### III.  CONCLUSION

We therefore **REVERSE** the district court's denial of Davis's habeas petition and **REMAND** the case to the district court with instructions to grant a conditional writ of habeas corpus, giving the State of Michigan 120 days within which to provide Davis a new trial or, failing that, to release him.

_____

**DISSENT**

_____

RONALD LEE GILMAN, Circuit Judge, dissenting. The majority finds this case indistinguishable from our decision in *Brown v. Palmer*, 441 F.3d 347 (6th Cir. 2006), where this court granted habeas relief on the ground that the state court unreasonably concluded that the evidence was sufficient to convict Brown of aiding and abetting a carjacking. As the author of *Brown*, I respectfully disagree. I also believe that the majority fails to give proper deference to the Michigan trial court's decision that we, as federal judges applying applicable Supreme Court precedent and the Antiterrorism and Effective Death Penalty Act (AEDPA), are required to give it. Accordingly, I dissent.

The evidence against Davis demonstrated that (1) he arrived at the restaurant where the carjacking took place with Washington and an unidentified third person in a Chevrolet Cavalier; (2) Davis entered the restaurant while two of the victims were inside; (3) Washington stood outside the restaurant while the third person stayed in the Cavalier; (4) Davis did not order any food, but rather asked for a cup of water; (5) after the two victims inside the restaurant left to enter their Lincoln Navigator SUV and join a waiting passenger, Washington ordered all three of the victims out of the vehicle at gunpoint; (6) Davis stood at the window inside the restaurant while the carjacking was occurring; (7) Washington drove the stolen SUV a few feet toward the restaurant and stopped, at which point Davis immediately walked out and hopped into the SUV; (8) Washington then drove away from the scene with Davis as a passenger; (9) the third person who was in the Cavalier drove off after them; (10) roughly two-and-a-half hours later, Davis, Washington, and one other man were caught stripping the SUV in a dilapidated garage behind an abandoned house; (11) Davis was found lying flat on his back in the garage, working underneath the stolen SUV when the police arrived; and (12) the Cavalier in which Davis and Washington drove to the restaurant and that was seen trailing the SUV from the restaurant was found nearby.

In contrast, the evidence in *Brown* showed that (1) Brown was parked in a car at a gas station; (2) the perpetrator exited the gas station's store and entered Brown's car for an unstated but apparently very brief period of time; (3) Brown then pulled forward to a gas pump and the perpetrator exited Brown's car; (4) the perpetrator immediately pointed a gun at a man attending to a Buick sedan, fired his gun in the direction of the man as the latter ran away, then entered the Buick and drove off; (5) Brown watched this occur from the driver's seat of his car, after which he attempted to drive off himself, but his tires skidded in the snow; (6) the Buick's owner, who had been walking from the gas station's store toward his car when the carjacking occurred, ran over to Brown's car and punched Brown in the face; (7) Brown immediately told the Buick's owner that he had just met the perpetrator a few minutes before and had simply offered to give him a ride; (8) aided by a friend, the Buick's owner grabbed Brown, pulled him from the car, and drove it to a police station to file a report; (9) Brown failed to retrieve his car afterwards; and (10) the perpetrator was never apprehended. *Id.* at 349.

I believe that the factual differences between these two cases are material. First, there was no evidence that Brown arrived at the scene with the perpetrator. He claimed he had just met the man a few minutes earlier, presumably at the gas station itself. Here, Davis arrived at the scene with Washington, raising a clear inference that they were previously acquainted.

Second, the behavior of Brown and Davis before and during the carjacking differed significantly. Brown engaged in no overt acts to indicate that he was involved in the crime. He simply sat in his car and watched the crime unfold in front of him, to his professed shock and dismay. Davis, on the other hand, exited the Cavalier with Washington, entered the restaurant, failed to order any food, and stood at the window. Even the majority acknowledges the assumption "that Davis was staring at the crime from the large front window of the restaurant." (Maj. Op. at 12) Indeed, no other inference seems reasonable in light of the fact that Davis immediately walked out and hopped into the carjacked SUV when Washington drove it a few feet toward the restaurant. Davis would have had no other way of so closely coordinating his actions

with those of Washington if he had not been watching the carjacking unfold. In short, Davis's behavior during the crime was far closer to that of a coconspirator than Brown's.

Another key difference between this case and *Brown* is that Davis fled the scene *in the stolen vehicle*. Because Davis arrived at the crime scene in the Cavalier, he could just as easily have departed in the same car. Davis instead purposely chose to enter the SUV that he had just seen his companion carjack. What else could more clearly indicate his connivance in the carjacking scheme?

For *Brown* to arguably control the outcome in this case, Brown would have needed to exit his car at the gas station, watch the carjacking occur, and then enter the stolen car to drive off with the perpetrator. The fact pattern here is far more incriminating because it indicates that Washington was expecting Davis to enter the SUV (without any contemporaneous communication between them) that Washington had *just stolen*. In contrast, the perpetrator in *Brown* did not wait for Brown to enter the carjacked Buick, did not drive it towards Brown, and did nothing after the crime to indicate that the two were working in tandem.

Another difference here is the lack of any proof to refute the circumstantial evidence that Davis and Washington were previously acquainted. Brown, in contrast, denied any advance knowledge about the carjacking and denied even knowing the perpetrator until they met at the gas station. Furthermore, Brown made these denials immediately after the crime and thus had little time to fabricate an exculpatory story.

Finally, Davis and Washington were found breaking down the stolen SUV shortly after the crime. Although this act by itself does not constitute aiding and abetting the carjacking, the overall sequence of events greatly strengthens the circumstantial case against Davis. Pieces of evidence are not to be viewed in a vacuum; rather, they are viewed in relation to the other evidence in the case. *See United States v. Warman*, 578 F.3d 320, 338 (6th Cir. 2009) (rejecting a sufficiency-of-the-evidence claim because various pieces of evidence "[t]aken together" were sufficient to meet the *Jackson* [*v. Virginia*, 443 U.S. 307, 319 (1979)] standard); *United States v. Siyam*, 325 F. App'x 675, 680 (10th Cir. 2009) (noting, when discussing a sufficiency-of-the-evidence claim, that

"[w]e do not view each piece of evidence in a vacuum; we consider the collective inferences drawn from the evidence as a whole"); *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999) ("An aider and abettor's state of mind may be inferred from all the facts and circumstances." (citation omitted)). Together with the other circumstantial evidence, the fact that Davis and Washington were continuously together from the time that they arrived at the scene of the carjacking until they were caught stripping the SUV—essentially sharing in the proceeds of the crime—is strong evidence of Davis's aiding and abetting the carjacking. *See People v. Allen*, 505 N.W.2d 869, 871 (Mich. Ct. App. 1993) ("Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.").

Comparing the present case to a hypothetical situation further proves the point. Assume that a car arrives in a mini-mall parking lot. Two men exit. The first man goes into a restaurant with a clear view of a bank in the mall. He orders a glass of water and stares at the bank. The second man enters the bank, robs it at gunpoint, and reenters the car. He pulls the car closer to the restaurant, where the first man promptly exits the restaurant and hops in the vehicle. The two drive off, and several hours later are found dividing up the cash between them. In such a case, the fact that the two men are splitting the proceeds afterwards strongly indicates that the first man's actions *at the time of the robbery* were meant to aid and abet the crime. To argue that such evidence is meaningless is the prerogative of a defense attorney in closing argument, not that of a federal appeals court reviewing a § 2254 petition. This is why I emphatically disagree with the majority's reasoning that "the fact that Davis was found stripping the car several hours after the crime provides no indication or inference that Davis encouraged Washington in the commission of the crime in any way." (Maj. Op. at 13)

Given the material differences between this case and *Brown*, and the strong circumstantial evidence that Davis served as a lookout and/or helped plan the carjacking, I see no basis to grant Davis habeas relief in light of the AEDPA deference that we are obligated to apply. The key reason for granting habeas relief in *Brown* was that the evidence there was deemed too speculative for a jury to find Brown guilty beyond a

reasonable doubt. *See Brown*, 441 F.3d at 352-353. But in light of AEDPA's deferential standard, *Brown* was a very close case. The present case, on the other hand, is distinguishable because the additional facts supporting the jury's verdict push it well beyond an "objectively unreasonable" outcome that would entitle Davis to habeas relief. *See Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (explaining that a state court's decision must be "objectively unreasonable" to merit habeas relief); *see also White v. Steele*, 602 F.3d 707 , 709-11 (6th Cir. 2009) (distinguishing *Brown* and denying relief on an aiding-and-abetting, sufficiency-of-the-evidence argument).

As the Michigan Assistant Attorney General put it at oral argument, this is a case that requires "double deference" to the jury's verdict. *See White*, 602 F.3d at 710 (explaining that AEDPA accords a "double layer of deference"). The Michigan state courts were required to reject Davis's postconviction sufficiency-of-the-evidence claim if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Even at this first level of deference, the *Jackson* standard is so demanding that "[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a 'nearly insurmountable hurdle.'" *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009) (citation omitted). Indeed, such a claim is so hard to prove on appeal that this court recently referred to it as a "perennial loser." *See Benning v. Warden, Lebanon Corr. Inst.*, 345 F. App'x 149, 157-58 (6th Cir. 2009).

Adding to this extremely high bar are the stringent and limiting standards of AEDPA. Under AEDPA, we may reverse a state court's decision that correctly identified and applied the controlling Supreme Court precedent only if the application of that precedent was "objectively unreasonable," meaning "more than incorrect or erroneous." *Wiggins*, 539 at 520-21 (citations and internal quotation marks omitted); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("It is not enough that a federal habeas court in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (citation and internal quotation marks omitted)).

The precise definition of "objectively unreasonable" remains elusive. *Maynard v. Boone*, 468 F.3d 665, 670-71 (10th Cir. 2006) (discussing most federal courts' failure to further define "objectively unreasonable" and collecting cases). Several of our sister circuits, however, have attempted to clarify this term. The First Circuit has explained that "if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application," and that "'some increment of incorrectness beyond error is required.'" *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (en banc) (quoting and agreeing with *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

Taking a slightly different tack, the Seventh Circuit has explained that a state court's decision is sustainable under AEDPA if it "is at least minimally consistent with the facts and circumstances of the case," *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997), or even "if it is one of several equally plausible outcomes," *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997), and that a decision is objectively unreasonable only where it is "well outside the boundaries of permissible differences of opinion," *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). *See also Mendiola v. Schomig*, 224 F.3d 589, 591 (7th Cir. 2000) (explaining that a state court's decision is not unreasonable if it took the controlling standard "seriously and produce[d] an answer within the range of defensible positions"). The Tenth Circuit similarly opined that "[i]t is not enough that the decision is clearly wrong or that the reviewing court would have reached a contrary decision," but instead "the state court decision must be at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable." *Maynard*, 468 F.3d at 671 (citation and internal quotation omitted).

This court has not delved deeply into the issue, but Judge Cole has indicated that where a state court makes "a close call" on a constitutional question, this "militates against the conclusion that the state court's application of the relevant Supreme Court precedent was objectively unreasonable." *Lopez v. Wilson*, 426 F.3d 339, 358 n.1 (6th Cir. 2005) (en banc) (Cole, J., concurring) (citation and internal quotation marks omitted). Moreover, the Supreme Court has recently explained that "[w]hen assessing

whether a state court's application of federal law is unreasonable, 'the range of reasonable judgment can depend in part on the nature of the relevant rule' that the state court must apply." *Renico v. Lett*, 130 S. Ct. 1855, 1864 (2010) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Accordingly, "'the more general the rule' at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway state courts have in reaching outcomes in case-by-case determinations.'" *Id.* (brackets omitted) (quoting *Yarborough*, 541 U.S. at 664). And the *Jackson* standard—requiring a court to allow for a range of rational factfinders and to view the evidence in the light most favorable to the prosecution—is exceedingly general. *Foxworth v. St. Amand*, 570 F.3d 414, 429 (1st Cir. 2009) (explaining that the *Jackson* standard is "a general standard"); *see also Wright v. West*, 505 U.S. 277, 308 (1992) (Kennedy, J., concurring) (identifying *Jackson* as enunciating "a general standard").

We must therefore give the Michigan trial court considerable leeway in the case before us. My own opinion is that Davis's case fails to meet even the first level of deference as required by *Jackson*. This view is presumably shared by the district court below, which referred to the evidence in the case as "strong" and even denied a certificate of appealability. *See, e.g.*, *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (explaining that a habeas petitioner is entitled to a certificate of appealability by simply showing "that reasonable jurists would find the district court's assessment of the constitutional claims debatable" (citation and internal quotation marks omitted)). Given the strong circumstantial evidence that Davis was involved in the planning and execution of the crime, I firmly believe that at least one "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson*, 443 U.S. at 319; *see also United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." (citation omitted)).

And when this case is given "double deference" through the lens of AEDPA, so that we are limited to reviewing whether the state court's decision was so objectively

unreasonable as to be "beyond error," *see McCambridge*, 303 F.3d at 36 (citation omitted), or "outside the boundaries of permissible differences of opinion," *see Hardaway*, 302 F.3d at 762, or more than "clearly wrong," *see Maynard*, 468 F.3d at 671, the outcome seems obvious. Even if the majority would have found differently had they sat in the jury box or heard this case on direct appeal, the Michigan trial court's decision is certainly not so far out of line with the very general standard set forth in *Jackson* as to warrant giving Davis habeas relief. The state court's decision was simply not objectively unreasonable. *See Price v. Vincent*, 538 U.S. 634, 639, 643 (2003) (unanimously reversing the Sixth Circuit's grant of habeas relief where the court "recited the standard" of AEDPA but failed to conduct an appropriately deferential review of the case). I therefore respectfully dissent.